# Hodge v. State.

### Murder.

(Decided February 8, 1917.   74 South. 373.)

**Homicide; Evidence; Motive.**—Where defendant was being prosecuted for the murder of a deputy sheriff while the latter was engaged in securing evidence of defendant's alleged illegal sale of intoxicating liquors, evidence of such illegal sale by defendant and of defendant's threats against the officers for interfering with his business, was admissible as tending to show motive.

APPEAL from Covington Circuit Court.

Heard before Hon. A. B. FOSTER.

Tom Hodge was convicted of murder and he appealed. Affirmed.

A. WHALEY for appellant.   W. L. MARTIN, Attorney General, and HARWELL G. DAVIS, Assistant Attorney General, for the State.

GARDNER, J.—Appellant was convicted of the murder of one S. L. Baker and sentenced to life imprisonment. The deceased was a deputy sheriff of Covington county, and located at Florala, Ala., where he formerly was a policeman.

The testimonny for the state went to show that on Saturday night, September 18, 1915, the deceased was foully murdered at about 10:30 o'clock while in the street in front of the defendant's home in Florala, being shot by some one in ambush in the defendant's yard, and the evidence identified the defendant as the one who did the shooting.

One Crosson, a member of the Florala police force, testified to the effect that he was with the deceased at the time he was shot, the two having come together from a restaurant operated by the defendant; that he (Crosson) had a warrant for the defendant's arrest, the warrant being at the time of the trial in possession of one Lewis, chief of the police force; that he saw the defendant leaving the restaurant and told him not to go off, and that defendant replied, "I told you to go with me," and, with an oath, "Just come on if you want to." Witness stated that

[Hodge v. State.]

he and the deceased then started to the defendant's residence, about a quarter of a mile from the restaurant, and as they reached the sidewalk in front of the house the defendant, who was in the yard under a tree, ordered them to stop, saying with an oath, "Don't you come in here;" that deceased turned and walked toward the middle of the street, the defendant cursing and calling out, "I told you if you come up here I would kill you," and the deceased replying, "You wouldn't shoot me, would you, Mr. Hodge? I haven't done you any harm;" that a woman about the house cried out, "Don't do that," and just then the shot was fired. Witness further stated that the deceased lived only about 30 minutes after being shot, and that the night was a bright moonlight night. Other witnesses testified to seeing the defendant with a gun under his arm coming out of his gate just after the fatal shot was fired and walking rapidly away. The evidence further tended to show flight on the part of defendant and his subsequent arrest in the state of Georgia.

The defendant offered evidence in rebuttal as to his identity as the person who did the shooting, claiming to have been elsewhere at the time, and also as to the condition of the night in question. Testifying in his own behalf, defendant insisted that he had nothing to do with the crime; that he was down in the business section of the town when the gun was fired; that he had made no threats against the deceased nor any other officer; that he never had any trouble with the deceased and no ill feeling whatever existed between them.

The state was permitted to prove, over the defendant's objection, that the warrant issued for defendant's arrest charged him with a violation of the prohibition law; and this warrant, which was identified by Chief of Police Lewis, was, as we construe the bill of exceptions, the same warrant which the witness Crosson testified he had at the time the deceased was shot. Lewis was permitted to testify that he had a warrant to search the defendant's place of business the night of the murder, and that he had given it to the defendant. The warrant was dated September 18, 1915. The state was permitted to show that this warrant was to search defendant's place of business for liquor, and that whisky was found; that the defendant was given the warrant and had it in his possession when he left his place of business on the night of the murder. The state also showed by the witness Price that about three-quarters of an hour before the killing he

went into the defendant's place of business and asked for some beer, and defendant said he had none; that the deceased had "been out in front all day watching him, and he had no chance to get anything, and from the appearance of things they were fixing to raid his place that night; that he did not aim to be brought up before the courts any more for selling liquor, and when they came there to raid again there would be trouble." The state proved by the witness Roberts that at about sundown the day of the murder he had a conversation with the defendant while standing near his place of business, and defendant asked him what the officers were doing caucusing, and if there was any warrant out for his place, saying, "They are going to keep monkeying around till they get the h—— shot out of them," and that about that time he saw the deceased and Lewis and one Livings talking together on the streets, all three being officers. Witness Patrick testified for the state as to threats made by the defendant against the officers just a few days before the murder.

It is insisted by counsel for appellant that the trial court committed reversible error in allowing the introduction in evidence of the warrant for searching defendant's place of business and that for his arrest for violation of the prohibition law; that such evidence was irrelevant and tended to great prejudice of defendant, citing in support *Maxwell v. State,* 129 Ala. 48, 29 South. 981. The facts of that case, however, are not at all similar to those involved in the instant case, and we do not consider that it is here in point.

The defendant denied any part in the crime, insisting upon his defense of an alibi, and further testified that there had been no ill feeling between himself and the deceased.

The general rule as to inadmissibility of evidence of other crimes is well recognized, but to this rule there are many exceptions. That the evidence in this regard was admissible in connection with all other evidence in the case, together with defendant's threats against the officers as tending to show motive, is clear from the following authorities: Underhill Cr. Ev. (2d Ed.) §§ 87, 88, 321-323; *Spicer v. State,* 188 Ala. 9, 65 South. 972; *Hawes v. State,* 88 Ala. 37, 7 South. 302; *Allison v. State,* 1 Ala. App. 206, 55 South. 453; note to *People v. Molineux,* 62 L. R. A. 193. An examination of these cases will disclose that there was no error in admitting this testimony, and we con-

[State, ex rel. Gaston v. Black; In Re Tate; State, ex rel. Tate v. Fort.]

clude that the citation of these authorities will suffice without further discussion.

No error being found in the record, the judgment is affirmed. Affirmed.

ANDERSON, C. J., and McCLELLAN and SAYRE, JJ., concur.