371 So.2d 475 (1979)
Prynter HOWARD, Jr.
v.
STATE.
6 Div. 795.
Court of Criminal Appeals of Alabama.
May 22, 1979.
*476 Benjamin Daniel, Birmingham, for appellant.
William J. Baxley, Atty. Gen., and Samuel J. Clenney, III, Asst. Atty. Gen., for the State, appellee.
DeCARLO, Judge.
The appellant was charged in an indictment with feloniously taking and carrying away one diamond ring, valued at $1,400.00, the personal property of Loyle C. Seymour. After a trial before a jury in Jefferson County, Bessemer Division, he was found guilty and sentenced to ten years imprisonment. Notice of appeal was given and the appellant was declared an indigent for the purposes of this appeal.
In April, 1977, Shirley Stringfellow was employed by Loyle C. Seymour Jewelers. She recalled that, on April 19, 1977, the appellant, whom she identified in court, came into the jewelry store with another man. The appellant was the larger of the two men.
The men stated that they wanted to see "some gent's diamond rings." After viewing some rings, the men asked to see something larger. At that point, Stringfellow summoned the store owner, Loyle C. Seymour. Seymour spoke with the two men for a short time and the men left the store.
Stringfellow said that the men returned at a later time, but she could not remember the date. She recalled that she was at work at the time and, when she asked the men if she could help them, they responded that they were waiting for the owner, Mr. Seymour. According to Stringfellow, Seymour came out and she went to the front of the store. She stated that "the next thing that I knew, Mr. Seymour had a gun." Subsequently, the police were called and the appellant and the man with him were taken away.
During cross-examination, Stringfellow testified that, when the appellant and the other man came into the store, she noticed some jewelry on the smaller man. She said he was wearing several diamond rings, but stated that she did not remember the appellant wearing any jewelry. According to Stringfellow, she remembered the appellant asking to see some larger rings. She said that she showed him only about two or three rings because they wanted to see something bigger than any she had at the time.
Further, the witness said she did not see the appellant and the other man come into the store on the second occasion that they were there because she was not working. However, on the third occasion when they asked to see Mr. Seymour, she was working and saw them again.
Stringfellow also stated that Margaret Snyder and some other store employees were working the day the men arrived on their third visit. She recalled that one of the rings she showed to the men was a diamond cluster, weighing approximately two carats.
Margaret Snyder was employed by Seymour Jewelers on the day in question and testified that around eleven o'clock that morning, the appellant, whom she identified at trial, came into the jewelry store with another man shorter than himself. She recalled that the smaller man asked if they could be shown some diamond rings. During the trial, she recalled that the two men had been in the store a week earlier.
According to Snyder, on the second time, the two men were shopping together and *477 asked to see a large diamond cluster ring which they pointed out in the jewelry case. The witness said they looked at the ring and then returned it to her. She described the ring as a large, white gold cluster, having seven diamonds, weighing approximately two carats.
Further, Snyder stated that, when she placed the "large cluster diamond ring back in the tray, the men requested to see the entire tray." At that time, she went to the back of the store and asked for Mr. Seymour to show them the tray. She explained that she was not allowed to remove the tray from the jewelry case, but was allowed to remove only one diamond ring at a time.
She recalled that she continued to observe the men as they talked with the owner of the store. Snyder said that she recalled hearing the smaller of the two men say, "I have come back to get a ring .. I have come back to see that ring." At that time Seymour removed the tray from the jewelry case.
According to Snyder, she could hear the men discuss the ring with Mr. Seymour but did not see them try on any of the rings. She recalled hearing the smaller of the two say that they would return after a "little while."
After the men had left, and some five minutes had elapsed, Snyder said she walked over to the case and realized that a ring had been changed. She said that the two-carat, white gold diamond ring was not in the tray, but that a yellow gold glass ring was in the slot. Snyder said that, on making a close examination, she called the owner and informed him that the diamond ring was missing.
During the trial, she was shown State's Exhibit 1, which she stated was the ring left in the place of the diamond cluster ring that was taken.
Further, the witness testified that she was working on the Friday, April 22nd, when the two men returned and that she called the police immediately after she and Mr. Seymour recognized them.
Snyder added that, on the Tuesday before the men were arrested on Friday, she had informed them that the price of the ring as she recalled it was "twenty-seven hundred dollars."
Loyle C. Seymour was the owner of Seymour Jewelers in Bessemer, Alabama. He identified the appellant during the trial as one of the two men who had come into his jewelry store on three different occasions. Seymour recalled that on the first occasion, which was a few days before April 19, 1977, Shirley Stringfellow, one of his employees, came to the office and said that two men wanted to see some big diamonds. According to Seymour, he then showed the appellant and a smaller man a two-carat cluster diamond ring. Seymour stated that the men told him that they were expecting an income tax refund and would be back in a few days.
On April 19th, which was the second occasion, the two men returned and he again showed the appellant and the other man the diamond cluster ring which he had shown them on the previous occasion. But, at that time, the tray containing the rings was taken from the showcase and placed on top of the showcase counter.
Seymour said that the appellant and the smaller man each tried on several different rings. He said they also exchanged the rings between themselves and tried on the rings that the other had previously tried on.
Seymour stated that he did not recall whether the two men were wearing any rings on the second occasion they came into his store. However, he stated that he did recall that one of them had a billfold containing some large bills. Seymour testified that, on the second occasion, the men did not buy anything and that the appellant left before the smaller man.
According to Seymour, they had been gone only a few minutes when Margaret Snyder informed him that the rings had been "switched." Seymour said he then examined the tray where the two-carat cluster ring was supposed to be and found a "fake ring." During the trial he identified State's Exhibit 1, as the "one that was *478 stuck in the place of the diamond ring." Seymour said that the "fake ring" was worth approximately eight or ten dollars, and the diamond cluster ring was worth $1,450.
Further, Seymour stated that, on Friday, April 22, 1977, when the men returned to the store for the third time, he and Snyder recognized them and, after the police were called, the men were arrested and taken away. He added that, on April 19th, when they discovered the ring missing, the police were called and a report was made.
Seymour testified that usually he and his daughter ordered the rings for the jewelry store but that other employees could order from the wholesale house. Further, he stated, in reference to State's Exhibit 2, which was the ring left in place of the diamond cluster ring, "we don't carry a cheap ring as large as this big ring. We never have had."
Detective Sgt. B. E. Shew, of the Bessemer Police Department, stated that he was working April 22, 1977, and went to Seymour Jewelers where he saw the appellant and his brother, Claude Howard. Detective Shew said that, shortly after he arrived at the store, Officers Thedford and Willis came to the scene and the appellant and his brother were taken to the police department.
Norma York was employed by Goodwin Jewelry Company in Bessemer, Alabama, which was located "about a block" from Seymour Jewelers. She testified that, on April 19, 1977, the appellant came into Goodwin Jewelry with another, smaller man. She stated that they requested to see a ring that was in the display window of the store. After she retrieved the ring from the window, she placed it in a box and handed it to the man who was with the appellant. She stated that, at that time, the other man asked the appellant to look at it with him and they walked toward the front door of the store, which was near the counter where she was standing. She said the smaller man made the request so he could see the ring in the sunlight. She recalled that, at that time, both men had their backs to her and that the ring they were holding was a "nine-diamond, one carat cluster, gent's ring."
York stated that she removed the ring from the box herself and gave it to the two men so that they could look at it. She said the ring was returned to her and the men left the store without purchasing anything.
According to York, later on the same date, she discovered the ring in the box was not the ring that she had shown to the appellant and the smaller man.
During cross-examination, she identified a ring, State's Exhibit 3, as "just glass" and stated that State's Exhibit 4 was, in fact, the diamond ring.
She stated that the smaller man was the one she had handed the ring to and said that the appellant had handed it back to her. It was also the smaller man who had taken the ring to the door and the appellant had just stood and looked at it.
She testified that it was approximately two days later when they discovered the ring in the box was not the diamond ring, which was worth approximately $995.
Further, York stated that, on Friday afternoon, after the incident, Detective Sgt. Shew came to the jewelry store and showed her a group of some eight pictures, but she was unable to identify anyone in the group. However, during the trial, she stated that she recognized the appellant as one of the men who came into the store.
H. L. Johnson was the manager of Goodwin Jewelry in Bessemer, Alabama. During the trial, he identified State's Exhibit 4 as the ring he found in a ring box that had been placed in the show window of the store. He said that the ring was worth "around ten dollars" but that was not the proper ring for that box. He said that the ring that was originally in the box was worth approximately nine-hundred dollars and had been purchased from the "Everway Company."
Johnson testified that when the fake ring was discovered he immediately went to the police department and made a report and, *479 at that time, identified State's Exhibit 3 as the diamond ring which had been taken from the box.
Bessemer Police Officer Tommy Thedford testified that, on April 22, 1977, he responded to a call from Seymour Jewelers, where he saw the appellant, Prynter Howard. He stated that the appellant was transported to jail and that he observed a ring in the appellant's personal belongings, which he identified as State's Exhibit 3. During cross-examination, Thedford said that he recognized the ring because of "the rough gold finish inside of the ring."
At the end of Thedford's testimony, the appellant moved to exclude the State's evidence, and the motion was overruled. Appellant then made a motion for a mistrial on the grounds that "the testimony offered by these two witnesses [H. L. Johnson and Norma York] is evidence of another offense. And, that it cannot be put into evidence on the theory to show identity through plan, mode, scheme and design since identity is not the question."
The motion for a mistrial was also overruled, and the case was concluded without appellant presenting any evidence.
Only one assertion of error is made on this appeal by the appellant. He contends that the admission of evidence tending to show the commission of another distinct and independent offense from that charged, in order to prove identity, was reversible error when identity was not placed in issue.
It is well recognized that there are many exceptions to the general rule regarding the inadmissibility of evidence as to the guilt of the accused of other and distinct offenses unconnected with the one charged. Hodge v. State, 199 Ala. 318, 74 So. 373; Fuller v. State, 269 Ala. 312, 113 So.2d 153; Mason v. State, 259 Ala. 438, 66 So.2d 557; McElroy, Alabama Evidence, § 69.01(1), 1977 ed.
In the present case, the evidence offered concerning the separate and distinct theft at Goodwin Jewelry was not shown to have been offered under the identity exception. No question of identity existed as to the perpetrated larceny at Seymour Jewelers. It was almost immediately after the appellant and his brother left that the sales clerk discovered that the rings had been "switched." The appellant and his brother were seen by the owner of Seymour's jewelry store and his personnel on three different occasions, and, from aught that appears, this was during daylight hours each time.
The appellant has cited, in support of this contention, Boggs v. State, 268 Ala. 358, 106 So.2d 263, Johnson v. State, 242 Ala. 278, 5 So.2d 632, and Williams v. State, Ala.Cr. App., 350 So.2d 708. Each of these cases cited by the appellant is distinguishable from the case at bar on the facts alone.
In Boggs v. State, supra, no evidence was shown to indicate whether the theft of the .25 automatic pistol occurred at, or near, the time of the murder for which Boggs was being tried. It also appears that the theft of the gun occurred in Anniston, Alabama, while the murder charged to Boggs occurred in Selma, Alabama.
The testimony presented in the case at bar concerned a theft which occurred on the same and at approximately the same time. The method of operation was the same, the theft was committed in the same fashion and by the same two individuals. In each situation, the appellant and his companion were recognized and positively identified in court.
In Johnson v. State, supra, the accused had offered testimony of an alibi which indicated that he was at home at the time of the alleged rape. The testimony in question there concerned other attacks on women which occurred after the rape for which Johnson was charged. Without question, the testimony in Johnson was offered on the issue of the accused's identity. However, in the case at bar, no testimony was presented by the appellant which would correspondingly place his identity in issue.
The appellant also relies on Williams v. State, supra, and maintains that it "is in point with the case at hand." The factual situation in Williams indicated that he had robbed the same store twice, and an eyewitness to the robbery testified "emphatically" that her identification was based solely on *480 Williams' presence in the store at the time he robbed her on the first occasion.
The Supreme Court of Alabama, in reversing the case, stated that such evidence was not admissible to show identity, because identity was not placed in issue by merely entering a plea of not guilty without presenting any evidence of an alibi, or other defense, or testimony from any witnesses.
The court also stated that the fact that the victim had made a positive identification and said that she did not have to rely on the subsequent encounter to make her positive identification only served to strengthen the position that the evidence was not introduced for the purposes of showing identity.
In the case under review there were positive identifications made by the manager of Seymour Jewelers and his sales personnel. There was a statement by the sales clerk at Goodwin Jewelry who acknowledged that she "truly recognized" the appellant.
The appellant did not present any evidence of an alibi or offer the testimony of any witnesses that would have placed his identity in question. It is our judgment that the question of identity was not presented and that the testimony concerning the theft at Goodwin Jewelry was properly admitted.
In Summers v. State, Ala.Cr.App., 348 So.2d 1126, this court stated that evidence of a robbery, which was committed by the same party on the same date as the robbery for which he was being tried, was admissible. The court went on to say that it was properly admitted "as of the res gestae and constituted one continuous criminal occurrence or adventure."
The Alabama Supreme Court, in Jackson v. State, 229 Ala. 48, 155 So. 581, stated:
"Everything constituting the one continuous transaction is admissible as of the res gestae. No matter how many distinct crimes may be involved, all the details of the one continuous criminal occurrence or adventure may be considered by the jury in passing upon the culpability, the wickedness, and depravity of the crime for which the party is being tried."
See also, Lowe v. State, 134 Ala. 154, 32 So. 273; Parsons v. State, 251 Ala. 467, 38 So.2d 209; Moseley v. State, Ala.Cr.App., 357 So.2d 390.
In the case under consideration, the testimony showed that the larceny at Seymour Jewelers, of which the appellant was charged, was committed on the same day, April 19, 1977, as the offense at Goodwin Jewelry. The offense occurred at Seymour's about 11:30 A.M., and, from aught that appears, the offense at Goodwin's occurred around the same time.
The respective stores were also located on the same street, with only one block separating them.
Considering these facts, we hold that the evidence involving the theft which occurred at Goodwin Jewelry, which was committed by the same party on the same day, was properly admitted as "constituting one continuous occurrence or adventure."
In addition, included in the exceptions to this rule of evidence outlined in Mason v. State, supra, is that of showing the accused's intent or motive. McElroy, Alabama Evidence, § 70.01(19)(E) at 163, 3rd ed., 1977, indicates that testimony regarding the larceny at Goodwin Jewelry, which occurred a block away from Seymour Jewelers, committed in the same manner by the same two men, and which occurred on the same date, would be proper to show intent.
Finally, the fact that the appellant, at his arrest, had in his possession a ring which was the property of Goodwin Jewelry was also properly admitted into evidence to show felonious intent.
The issue of the sufficiency of the evidence to support the verdict was properly raised by appellant's motion to exclude the State's evidence.
Larceny, as defined in Higgs v. State, 113 Ala. 36, 21 So. 353, "is the felonious taking and carrying away of the personal property of another with the fraudulent intent to convert it to the use of the taker or deprive the owner thereof. ..."
To justify a conviction of larceny these elements must be proved and can be *481 shown by circumstantial evidence as well as by direct and positive evidence. Poole v. State, 28 Ala.App. 37, 178 So. 238; Melson v. State, 38 Ala.App. 514, 88 So.2d 851; Jones v. State, 51 Ala.App. 570, 287 So.2d 886; Woods v. State, 57 Ala.App. 1, 325 So.2d 517.
Therefore, it is our opinion that even though the evidence presented was circumstantial it was sufficient for the jury to find the appellant guilty of larceny.
As required by law, we have examined the entire record in this appeal and have found no error prejudicial to appellant. Therefore, the judgment of conviction by the Jefferson Circuit Court is due to be affirmed.
AFFIRMED.
HARRIS, P. J., and TYSON, J., concur.
BOOKOUT and BOWEN, JJ., concur in result.
BOWEN, Judge, concurring in result:
I concur in the result reached by the majority for the reason that I do not think that both larcenies can or should be considered as "one continuous occurrence or adventure". Evidence of the larceny at the Goodwin Jewelry was properly admitted under the exception to the general rule admitting proof of other crimes to show the modus operandi employed in the commission of the charged larceny. C. Gamble, McElroy's Alabama Evidence, Section 70.01(19)(b) (3rd ed. 1977).