Toofie Deep was indicted under § 13A-8-3, Code of Alabama 1975, for "knowingly obtaining or exerting unauthorized control over a Morgan Portable Building, . . . the property of the State of Alabama, . . . with the intent to deprive the owner of said property." The jury returned a verdict of "guilty as charged" and the trial court sentenced Mr. Deep, the appellant, to three years' imprisonment in the state penitentiary.
In summary, the state theorized that the appellant, as an employee of the "Hurricane Frederick" Disaster Housing Office in Mobile, transported a Morgan Portable Building, which had been used as a community "cook shack" at the Sea Pines Trailer Park during the disaster relief effort, from the Park in Mobile, Alabama, to his home in Montgomery, Alabama, "with the intent to deprive the owner of [its] property." The "owner" in this instance was the State of Alabama which had purchased the building with federal funds earmarked for the disaster relief effort.
The appellant's theory of the case was that, although he did take the building to his home in Montgomery, he was "authorized" by his immediate supervisor, who had the power to so authorize, to take it and use it only until the state needed it again or until a "staging area" (storage facility) in Montgomery could be completed. The appellant's contention is that this "temporary" use of the building was "authorized" in exchange for appellant's services of transporting the building to and "storing" it at his home in Montgomery at his own expense.
It was undisputed at trial that the appellant was hired by Lee Killough, Director of Disaster Housing in Mobile, to assist him in securing temporary housing for eligible victims of the 1979 Hurricane Frederick disaster, and that in that capacity the appellant performed a valuable service for the citizens of this state. It was during the "winding down" phase of this disaster relief effort, during the first week of January, 1980, that the alleged "theft" by the appellant of the Morgan Portable Building occurred.
The funding for the disaster relief program begun in the aftermath of Hurricane Frederick, was supplied by the federal government through the Federal Emergency Management Agency (FEMA), but the program was implemented through the State Department of Civil Defense, State of Alabama. Joe Hedrick, acting Director of the State Department of Civil Defense at *Page 143 
that time, appointed Mr. Killough as Director of the Disaster Housing Office in Mobile and authorized him to hire the personnel and purchase the equipment required to provide the necessary housing for disaster victims.
One item purchased during this disaster relief effort was a 10 foot by 20 foot Morgan Portable Building, which was used as a temporary "cook shack" at the Sea Pines Trailer Park in Mobile. This building was used as a "cook shack" until electricity was restored to the surrounding homes. After its useful purpose had been served the building was left vacant at the Park where it became susceptible to vandalism. On or about January 5, 1980, this building was transferred by the appellant to the back yard of his home in Montgomery where it was used to store motorcycles, trash cans, garden tools and other miscellaneous items of personal property.
The prosecution presented evidence that supported its theory that the appellant intended to exercise "unauthorized" control over this item of state property and to "deprive" the state thereof.
Perhaps the evidence most damaging to the appellant on the issue of "intent" was the state's exhibits 16, 17, and 19, which were color photographs depicting the Morgan Portable Building as it was positioned in the appellant's back yard when it was seized by the authorities. Exhibits 16 and 17 demonstrated that although there had been no apparent attempts to hide or otherwise camouflage the building, shrubbery had been planted around its perimeter in front, and on both sides, and some white picket fencing had been placed around the base of the building. The back of the building was bordered by the chain-link fence which surrounded the appellant's back yard and which was partially "taken down" to move the building to its back yard location.
Exhibit 19 was a photograph of the aluminum identification plate which displayed the model number and serial number of the building. This plate was located on the outside of the door of the building just above the doorknob and was attached to the door with four bolts. The photograph revealed a number of vertical and horizontal scratches curiously located only on the identification plate with only a few extending a short distance onto the surface of the door itself. The state contended that these scratches were the result of an apparent attempt by the appellant to obliterate the model and serial numbers. The location of these scratches, which were most intense over the serial number "supports" this contention. However, both the serial number and the model number were quite legible in spite of the scratches. Also, the entire identification plate could have been removed by simply removing the four bolts holding it in place.
In addition to this physical evidence, the state presented several witnesses whose testimonies inferred appellant's alleged criminal intent.
George Dean, the State Comptroller, testified that the Morgan Portable Building was purchased with four $421.00 installments. Two of these installments were paid on January 14, 1980, and February 27, 1980, respectively, after the building had been transferred to appellant's home in Montgomery. However, the vouchers signed by Mr. Killough for these two payments indicated that the building was still part of the Sea Pines Trailer Park, thus implying that it was still being used in the disaster relief effort.
Robert Thomson, a "fiscal officer" hired by the appellant for service as a member of the disaster relief team, testified that he asked Mr. Killough in March, 1980, (after the appellant had transported the building to this home in Montgomery) why the Morgan Portable Building was not listed on the inventory of disaster relief equipment and was told by Mr. Killough that it was still part of the Sea Pines Trailer Park and did not need to be itemized.
Eddie Foster, another employee of the Disaster Housing Office hired by the appellant and the key witness for the prosecution, testified with reference several conversations either that he had with appellant privately or that he participated in with *Page 144 
appellant and others. Mr. Foster stated that appellant told him on October 6, 1979, that he, the appellant, had made some "extra money" during the "last disaster" and intended to make as much as possible on "this one" and asked Mr. Foster if he wanted to do likewise. (R 106-109). He further stated that he, Mr. Foster, told appellant that he did not wish to participate in any schemes to make extra money and that he refused appellant's request for help in transporting the Morgan Portable Building to Montgomery. He stated that in a conversation with the appellant and Bobby Kelley, one of the men who did move the building, Mr. Kelley told Mr. Foster that they had to "take down" appellant's fence in order to get the building in his back yard and that it took them all day. (R 115).
The appellant did not testify in his own behalf. The evidence which was presented in his behalf confirmed that the appellant did transport the Morgan Portable Building to his home in Montgomery where it was used to store personal property.
However, in defense of this action, appellant's evidence theorized that he was "authorized" to use the building until a "staging area" (a storage facility) in Montgomery could be completed or until the state again needed it and that he didnot intend to "deprive" the state of its property.
Mr. Killough was the key witness for the appellant. He testified that he "authorized" the appellant to take possession of and to use the portable building until a storage facility could be prepared for it or until it was needed again by the state. (R 312). He stated that in exchange for the "temporary" use of the building the appellant agreed to and did transport it to Montgomery at his own expense. Mr. Killough explained that he made this "authorization" when it came to his attention that the building had served its useful purpose as a "cook shack", had been vacated, and had become susceptible to vandalism at the Sea Pines Trailer Park. He acknowledged that he considered storage of the building at a federal "staging area" in Mobile and at a state "staging area" in Montgomery. He did not want to store the building at the nearby federal "staging area" because the state would have forfeited its right to future use of it. The state "staging area" in Montgomery would have been the best location, but he did not feel that it was in the proper state of repair to store the building. However, he expected the appellant to transfer the building to the Montgomery facility as soon as the facility was completed.
Mr. Killough admitted signing, after the appellant had taken the building, the two vouchers which indicated that the Morgan Portable Building was still part of the Sea Pines Trailer Park. However, he explained that he felt that he still had control of the building even while it was being "used and stored" at the appellant's home. He also emphasized that the cost to the state of transporting the building to Montgomery was saved because the appellant transported it at his own expense. In Mr. Killough's opinion the option of authorizing its temporary use by appellant was the best solution for the "temporary" disposition of the Morgan Portable Building.
Three other witnesses testified that they had visited the Montgomery "staging area" and had found it to be in a state of disrepair.
These same witnesses, Shirly Reinhardt, William Beech and Thomas Reinhardt, testified that they knew Mr. Foster, the prosecution's key witness, and that he had a bad reputation at work for telling the truth. On cross-examination they admitted that they were good friends of the appellant. Two other witnesses, Cynthia Cauthen and Kimberly Clark (Mr. Foster's own secretary) testified that Mr. Foster's reputation for telling the truth was bad and that they "would not believe him under oath."
Mr. Beech also admitted that the inventory which omitted the Morgan Portable Building was taken by him and that he must have "overlooked the building." In any event he accepted responsibility for its omission on the inventory list. Mr. Reinhardt stated further that he reported the alleged vandalism of the building to Mr. *Page 145 
Killough and that he and Mr. Beech and (he thought) Mr. Foster, too, participated in the meeting during which Mr. Killough gave appellant the authority to "temporarily" use the portable building.
Mrs. Reinhardt, Mr. Beech, Mr. Reinhardt, and Mr. Killough each testified that various other items of state property (e.g. disaster relief forms, desks and other office furniture) were routinely stored in the appellant's garage, also at no cost to the state.
The appellant also presented four character witnesses. Monsignor Michael McGuiness (a Montgomery pastor), Father Gordon Milstead (a priest), Charles McVay and James Farmer, each testified that they knew the appellant personally and that his reputation in the community was either good or very good.
Appellant's final witness, Joe Hedrick, the Director of the State Department of Civil Defense, testified that while he would not have authorized the final two payments for the Morgan Portable Building had he known that it had been transferred to appellant's home, he nevertheless, agreed that if Mr. Killough indeed considered all of the circumstances with reference the "staging areas", the transportation costs, and the agreement allegedly entered with appellant, then he would have had the authority to "authorize" appellant to "temporarily" store the building at his home.
 I
The appellant properly questioned the sufficiency of the evidence in support of the state's case in his motions to exclude the state's evidence and for a new trial. He cites as reversible error the trial court's denial of these two motions on this "sufficiency of the evidence" ground.
We have carefully scrutinized the evidence in this case and have concluded that, while the appellant presented a defense which, if believed by the jury, might have justified his conduct with reference this alleged removal of the structure, there was, nevertheless, sufficient evidence to support thejury's verdict of "guilty as charged."
Under the circumstances present in this case, the critical elements of the alleged offense were "unauthorized control" and "intent to deprive." Did the appellant obtain or exertunauthorized control over the Morgan Portable Building and did he intend to deprive the state of this property? Affirmative answers to each of these questions were required for a conviction under § 13A-8-3, Code of Alabama 1975.
These questions were properly put to the jury which had the responsibility of assessing the credibility of each witness and weighing all of the evidence, whether direct or circumstantial, as they viewed it. Cumbo v. State, 368 So.2d 871 (Ala.Cr.App.), cert. denied, 368 So.2d 877 (Ala. 1978); McBryar v. State,368 So.2d 568 (Ala.Cr.App.), cert. denied, 368 So.2d 575 (Ala. 1979); Reed v. State, 372 So.2d 872 (Ala.Cr.App. 1978), rev'd on other grounds, 372 So.2d 876 (Ala. 1979); Crowell v. State,389 So.2d 545 (Ala.Cr.App. 1980).
The appellant argues that the evidence is uncontroverted that Mr. Killough "authorized" the appellant to use and "store" the building at his home either until the state "needed it" or until the "staging area" in Montgomery was completed. This fact was confirmed by Mr. Killough himself, and corroborated by Mr. Reinhardt. As the appellant points out, the jury should not have arbitrarily disregarded these testimonies if they were not disputed at trial.
However, we find nothing in the record to indicate that the jury's determinations were "arbitrary", and contrary to appellant's assertions, evidence was introduced by the prosecution which at least inferentially challenged the credibility of these testimonies. There was evidence that Mr. Killough signed two expense vouchers which misrepresented the use of the building at that time and there was evidence that Mr. Killough approved an inventory list requested by FEMA even though he knew the list did not include the Morgan Portable Building. These factors were inconsistent with the appellant's "valid authorization" theory and might have persuaded the jury *Page 146 
to disbelieve Mr. Killough's story as corroborated by Mr. Reinhardt.
Furthermore, even if the jurors believed that some "control" of the building by the appellant was properly "authorized", evidence was introduced which might have convinced them that the "control" actually exerted by the appellant went beyond that amount so authorized. The testimony of Mr. Foster that the appellant had told him that he (the appellant) had made "extra money" on the last disaster and intended to make all that he could on this one coupled with the photographs depicting the permanency with which the appellant had installed the building in his back yard would have supported such a conclusion. Also, a period of five months elapsed from the time of Killough's alleged "authorization" to the time the building was seized in appellant's back yard. Perhaps the jury did not believe that restoration of the Montgomery "staging area" would have taken that long if that restoration had, indeed, been a factor which would have terminated the appellant's "authorized control."
We have no way of knowing how the jury weighed the facts presented, but they need not have totally disregarded Mr. Killough's testimony that some control was "authorized" in order to conclude that appellant "intended to deprive" the state of its property and eventually "exerted unauthorized
control over" same. Unauthorized control could certainly have been exerted even if the initial possession had been acquired with the consent of the owner.
Appellant contends that the jury's finding of guilt in this instance could only have been based on circumstantial evidence and inferences therefrom. Be that as it may, in Stewart v.State, 405 So.2d 402 (Ala.Cr.App. 1981), in commenting on a similar situation where the evidence presented questions offact for the jury, we stated the law in Alabama that:
 "Circumstantial evidence is not inferior evidence, Thomas v. State, 363 So.2d 1020 (Ala.Cr.App. 1978), and will support a conviction as strongly as direct evidence provided it points to the guilt of the accused. Kelsoe v. State, 356 So.2d 735
(Ala.Cr.App. 1978). While mere speculation, conjecture, or surmise, will not authorize a conviction, the jury is under a duty to draw whatever permissible inferences it may from circumstantial evidence and to base its verdict on whatever permissible inferences it chooses to draw. Kontos v. State, 363 So.2d 1025, 1034
(Ala.Cr.App. 1978)"
Since there was sufficient evidence to contradict the strong case presented by the appellant and to support the jury's verdict, the trial court correctly denied appellant's motions on the "sufficiency of the evidence" ground. Fuller v. State,269 Ala. 312, 113 So.2d 153 (1959); Harris v. State,358 So.2d 482 (Ala.Cr.App.), cert. denied, 358 So.2d 487 (Ala. 1978);Crowell v. State, supra; Stewart v. State, supra.
 II
Another contention of appellant with reference his "motion to exclude" is that the trial court erred in denying said motion on the ground that the value of the building in question was not proven, said value being an essential element of the offense charged.
We need only comment that sufficient evidence of value was established by the prosecution. The purchase price in mid-October of 1979 was $1684.00. The building was used for less than two months at the trailer park. The alleged offense occurred on or about January 5, 1980, less than three months from the initial date of purchase. The jury had in evidence photographs of the building depicting its condition on March 1, 1980, the date it was seized.
These facts gave the jury ample evidence, from which to conclude "beyond a reasonable doubt" that the building was worth more than $1,000.00 (the minimum amount required for the alleged "first degree theft"). Had the jury concluded otherwise, they, undoubtedly, would have returned a verdict for "second or third degree theft," which were discussed as "lesser included offenses" by the trial court in its charge to the jury. (R 435-437). *Page 147 
 III
Appellant filed a demurrer to the indictment stating as grounds, among others, that the indictment was defective in that it failed to specify the date of the alleged offense, said date being material because of the changes in Alabama's "theft" statutes as of January 1, 1980, and that the statute which he allegedly violated, § 13A-8-3, Code of Alabama 1975, is unconstitutional because it is "vague, uncertain, indefinite and overbroad in violation of the Fourteenth Amendment to the United States Constitution." The trial court's action of overruling appellant's demurrer on both grounds is cited as error.
 A
Appellant argues that the date of the alleged offense was necessary in the indictment because the new statute, § 13A-8-3, which was not effective until January 1, 1980, encompasses broader conduct than the "theft" statutes ("larceny" and "embezzlement") prior to 1980. Appellant complains, therefore, that defensive strategy would not necessarily have been the same under the applicable statutes before and after January 1.
Having reviewed all of the circumstances involved, we have determined that the demurrer was, on this ground, properly overruled by the trial court.
In upholding a robbery indictment recently in Summers v.State, 348 So.2d 1126 (Ala.Cr.App.), cert. denied,348 So.2d 1136 (Ala. 1977), cert. denied, 434 U.S. 1070, 98 S.Ct. 1253,55 L.Ed.2d 773 (1978), Judge Harris, speaking for this court stated:
 "The constitutional right of an accused to demand the nature and cause of the accusation against him is not a technical right, but is fundamental and essential to the guaranty that no person shall be deprived of his liberty except by due process of law, nor be twice put in jeopardy for the same offense.
 "An indictment should be specific in its averments in four prime aspects to insure this guaranty: (a) to identify the accusation lest the accused should be tried for an offense different from that intended by the grand jury; (b) to enable the defendant to prepare for his defense; (c) that the judgment may inure to his subsequent protection and foreclose the possibility of being twice put in jeopardy for the same offense, and (d) to enable the Court, after conviction, to pronounce judgment on the record.
. . . . .
 "The indictment in this case is couched in language so clear that any person of common understanding would know that the crime of robbery was charged against appellant."
In the instant case, in spite of appellant's technical
arguments to the contrary, we find that the indictment is, likewise, "couched in language so clear that any person of common understanding would know" that the appellant was charged with violating the new "theft" statute, § 13A-8-13, Code of Alabama 1975, a violation of which could only have occurredafter the effective date of the statute, January 1, 1980, as specified in § 13A-1-11, Code of Alabama 1975. Summers v.State, supra; Black v. State, 401 So.2d 320 (Ala.Cr.App. 1981).
Furthermore, the trial court, in light of appellant's demurrer to the indictment, ordered that the state respond thereto "by setting out the date on which the offenses occurred." The state complied with this order stating that the instant offense occurred on or about January 5, 1980. Such response was made on November 7, 1980, some two weeks before trial of this cause.
We therefore find no merit to appellant's contentions that he was denied "due notice" of the charges against him because of technical defects in either the indictment (R 450) or in the state's response to the Bill of Particulars. (R 468). Holt v.State, 238 Ala. 219, 193 So. 101, rev'g, 29 Ala. App. 100,193 So. 98 (1939); Black v. State, supra.
We are also not convinced that appellant's strategy in defense would necessarily have been different had he been charged under one of the "theft" statutes applicable prior to January 1, 1980. The new definition *Page 148 
of "theft" specified in § 13A-8-2, Code of Alabama 1975, as clarified by the definitions given in § 13A-8-1, Code of Alabama 1975, was not intended to and in our opinion does not create a broader range of "theft" crimes. Instead it was intended to unify the old "theft" offenses and thereby "eradicate the common law distinctions between the crimes of larceny, embezzlement and false pretenses" so that "one accused of one form of theft [would not be allowed] to escape a legal sanction because of proof of a different form which interferes with property rights in essentially the same way." See
Commentary to §§ 13A-8-2 through 13A-8-5, Code of Alabama 1975. Therefore, assuming the offense had occurred prior to January 1, 1980, and he had been charged under the proper "larceny" or "embezzlement" statute, and the jury had decided the facts as they apparently did here, we see nothing in the law of "theft" prior to January 1, 1980, which would have saved this appellant.
 B
Appellant's constitutional challenge due to vagueness also fails in this instance.
The new code sections challenged by appellant read as follows:
"§ 13A-8-2. Theft of property — Definition.
 A person commits the crime of theft of property if he:
 (1) Knowingly obtains or exerts unauthorized control over the property of another, with intent to deprive the owner of his property; or
 (2) Knowingly obtains by deception control over the property of another with intent to deprive the owner of his property. (Acts 1977, No. 607, § 3201.)" (Emphasis added).
"§ 13A-8-1. Definitions Generally.
. . . . .
(2) To `DEPRIVE . . .' means:
 a. To withhold property or cause it to be withheld from a person permanently or for such period or under such circumstances that all or a portion of its use or benefit would be lost to him; or
 b. To dispose of the property so as to make it unlikely that the owner would recover it; or
 c. To retain the property with intent to restore it to the owner only if the owner purchases or leases it back, or pays a reward or other compensation for its return; or
 d. To sell, give, pledge, or otherwise transfer any interest in the property; or
 e. To subject the property to the claim of a person other than the owner.
. . . . .
 (7) OBTAINS OR EXERTS CONTROL OR OBTAINS OR EXERTS UNAUTHORIZED CONTROL over property includes but is not necessarily limited to the taking, carrying away or the sale, conveyance or transfer of title to, or interest in, or possession of, property, and includes but is not necessarily limited to conduct heretofore defined or known as common law larceny by trespassory taking, common law larceny by trick, larceny by conversion, embezzlement, extortion or obtaining property by false pretenses." (Emphasis added).
Appellant asserts that the use of "exerts unauthorized control" and "deprive" in § 13A-8-2 as they are defined in §13A-8-1 creates an overbroad statute which (hypothetically) could be violated by one who temporarily borrows his neighbor's lawn mower without that neighbor's expressed permission. Appellant explains that the "not necessarily limited to" language used in § 13A-8-1 (7) in conjunction with the "under such circumstances that all or a portion of its use or benefit would be lost to him" language of § 13A-8-1 (2) gives § 13A-8-2
a sufficiently indefinite meaning to encompass the "borrowed lawn mower" situation and, thus, to make the statute void for vagueness. We disagree.
The focus of § 13A-8-2 is ascertained by reading the statute as a whole with every word and phrase in context. Few statutes could withstand the dissecting and restructuring process hypothesized by appellant, here. *Page 149 
The import of § 13A-8-2 is to proscribe all similar conductmotivated by similar intent which has similar results. The focus of this new "theft" statute is on the intent of the perpetrator (thief) to deprive the owner of his property. The legislature's objective was to remove the distinctions in the old theft statutes based on the manner of obtaining control
and, thereby, shed the old classifications of "larceny", "embezzlement", etc., which allowed those guilty of one type of theft to escape punishment when the evidence proved a different type. See Commentary to § 13A-8-2 through § 13A-8-5, Code of Alabama 1975. The language challenged by this appellant,"[withholding of property] under such circumstances that all or a portion of its use or benefit would be lost to him" in §13A-8-1 (2) and "not necessarily limited to" in § 13A-8-1 (7), comports with this legislative objective.
We see nothing constitutionally infirm in § 13A-8-2, as a whole, and see nothing unconstitutional in this statute as applied to the appellant. We agree with appellant that the borrower of a lawn mower should not be punished under §13A-8-2. Indeed such a "borrower" would not fit under this statute because he does not intend to withhold the owner's property [see § 13A-8-1 (2)a]. However, as under the old theft laws, one who obtains authorized possession might be punished if and when he exerts unauthorized control.
The jury was adequately instructed by the trial court and was justified by proper inference to conclude that even if the appellant obtained authorized possession, at some point in time his intentions fit the conduct proscribed in § 13A-8-2.
 IV
The trial court did not err in sustaining the state's objection to appellant's question of Robert Thomson which called for "hearsay" testimony with reference an alleged request by Mr. Killough that Thomson keep the paper work on the Morgan Portable Building "right". (R 67). The question posed was not specific enough nor was a sufficient predicate established to justify its admission over the state's timely, hearsay objection.
 V
Neither did the trial court err in admitting the testimony of Eddie Foster (R 107-111) which related statements by the appellant pertaining to his intent to make "extra money" on this disaster as he had during the "last one."
This testimony was indeed damaging to the appellant and generally would not have been allowed because of the rule prohibiting evidence of prior misconduct. However, since appellant's intent was a key issue in this case, the testimony was properly allowed as an exception to the general rule to prove appellant's motive or intent in taking possession of the portable building. Lucy v. State, 340 So.2d 840 (Ala.Cr.App.), cert. denied, 340 So.2d 847 (Ala. 1976); Pope v. State,365 So.2d 369 (Ala.Cr.App. 1978); Howard v. State, 371 So.2d 475
(Ala.Cr.App. 1979); Hayes v. State, 384 So.2d 623 (Ala.Cr.App. 1979), cert. denied, 384 So.2d 627 (Ala. 1980); Howton v.State, 391 So.2d 147 (Ala.Cr.App. 1980); Laing v. State,390 So.2d 1154 (Ala.Cr.App.), cert. denied, 390 So.2d 1160 (Ala. 1980).
Moreover, the jury was properly instructed by the trial court as to the limited use of this testimony solely on the issues ofintent or knowledge. (R 108, 110-111 and 431).
 VI
Appellant further contends that the trial court erred in denying his request to review prior written statements made by and a diary belonging to witness Eddie Foster. Appellant insists that this information was necessary for impeachment purposes.
The trial court reviewed the requested material and made the determination that the information contained therein was of no value to the appellant. (R 118, 124 and 288). Since the witness made no reference to these statements on direct examination (R 290) and since appellant was given ample *Page 150 
opportunity to question the witness as to any inconsistencies (R 122) therein, the trial court decided to refuse appellant's request to review these statements.
Such a determination was within the proper discretion of the trial court. Mabry v. State, 40 Ala. App. 129, 110 So.2d 250, cert. denied, 268 Ala. 660, 110 So.2d 260 (1959); Sanders v.State, 278 Ala. 453, 179 So.2d 35 (1965); Cooks v. State,50 Ala. App. 49, 276 So.2d 634, cert. denied, 290 Ala. 363,276 So.2d 640 (1973); Giddens v. State, 333 So.2d 615 (Ala.Cr.App. 1976); Beard v. State, 337 So.2d 1372 (Ala.Cr.App. 1976);McLaren v. State, 353 So.2d 24 (Ala.Cr.App.), cert. denied,353 So.2d 35 (Ala. 1977).
We find nothing in this record to indicate any abuse of discretion by the trial court and, consequently, see no error in this instance.
 VII
Finally, appellant asserts that certain questions and remarks by the prosecution were "so prejudicial as to deny the appellant a fair and impartial trial based on the evidence alone."
 A
The trial court sustained appellant's objection to a question posed to Mr. Killough regarding an alleged "civil suit" pending against the "whole Sea Pines Mobile Park thing down there in Mobile." (R 374). Appellant complains that the trial court's action, without a further curative instruction to the jury to disregard the question, was insufficient to eradicate the bias injected by the question. He, therefore, asserts that this failure to give a curative instruction was reversible error.
Having reviewed this record, we do not feel that thisunanswered question was so "highly prejudicial" as to mandate a curative instruction. For aught that appears, and appellant has offered no proof to the contrary, the potential prejudicial effect of this unanswered question was removed by the action of the trial court in sustaining appellant's objection. Espey v.State, 270 Ala. 669, 120 So.2d 904 (1960); Crouch v. State,53 Ala. App. 261, 299 So.2d 305, cert. denied, 292 Ala. 718,299 So.2d 312 (1974); Wright v. State, 57 Ala. App. 401,328 So.2d 650 (1976); Henley v. State, 361 So.2d 1148 (Ala.Cr.App.), cert. denied, 361 So.2d 1152 (Ala. 1978); Kennedy v. State,373 So.2d 1274 (Ala.Cr.App. 1979), and cases cited therein;Kendricks v. State, 378 So.2d 1203 (Ala.Cr.App. 1979).
 B
Appellant also argues that the prosecution improperly remarked that Mr. Killough had "lied" about the use of the Morgan Portable Building in the final two expense vouchers. (R 375-376). Appellant asserts as reversible error the cumulative effect of this remark when combined with the errors discussed above with reference the "civil suit" inquiry and the admission of Mr. Foster's testimony concerning appellant's alleged criminal intent.
Since we find no error in the prosecutor's remark challenged here, just as we found no error either in the admission of Mr. Foster's testimony with reference appellant's criminal intent or in the trial court's failure to give a curative instruction to the jury after sustaining the appellant's objection to the "civil suit" inquiry, appellant's "cumulative effect" argument must fail.
The remark challenged here came in the form of a question to Mr. Killough:
 "Q. All right, sir. And let me ask you this: Would the fact that you lied to the —" (Emphasis added).
This question was cut short by appellant's objection and after some discussion between counsel and the trial court, the question was rephrased in terms of Mr. Killough's having filed "false documents" (i.e. the final two expense vouchers which misrepresented the use of the Morgan Portable Building.) This entire line of questioning was subsequent to the cross-examination question at (R 370-371):
 "Q. Then you admit here today in this Courtroom in filing a false document with the Finance Director of the State of Alabama and the Department of Civil Defense, don't you? *Page 151 
 MR. JORDAN: Object. He is arguing with the witness. Repetitious.
THE COURT: Overruled.
"A. Yes." (Emphasis added).
The use by the prosecution of the term "lied" might have been technically incorrect in referring to Mr. Killough's admitted act of "filing a false document" but we fail to find in the prosecution's remark prejudice to the point of error, especially since at the trial court's request the question was rephrased using the latter language which referred to acts already admitted by Mr. Killough.
Questioning Mr. Killough about the validity of vouchers signed by him, which at least implied the continued use of the building at the trailer park in Mobile, was proper impeachment of him on the issue of his "authorization" for appellant to take the building.
Since there were no errors committed at trial requiring a reversal of this cause, and there was sufficient evidence to support the jury's verdict, this case is due to be and is hereby affirmed.
AFFIRMED.
All the Judges concur, except BOOKOUT, J., not sitting.