TYSON, Judge.
The indictment charged John P. Day with unlawfully obtaining $3,300 in lawful currency from one Judy Hix, with intent to deprive the said owner of the property, contrary to § 13A-8-3, Code of Alabama 1975 as amended.
The jury found the appellant “guilty as charged in the indictment” and following an extensive sentencing hearing the trial court set sentence at 10 years’ imprisonment under the Habitual Felony Offender Act.
Mrs. Nancy Goff testified that she operated the Hair Unlimited Style Salon on October 25, 1982. While waiting on Mrs. Judy Hix, she received a telephone call from a male who asked for her husband, Gary Goff. The male who telephoned identified himself as one Bill Taylor. Mrs. Goff stated that Taylor indicated to her that he was a gambler and had won some diamonds in a poker game and wanted to talk with her husband to see if he knew some people who might be interested in purchasing same.
Mrs. Goff related this conversation to Mrs. Hix, her customer, who happened to be an FBI agent. Mrs. Hix then asked Mrs. Goff to give Taylor her phone number and ask him to talk with her.
Mrs. Goff passed this information on the next day to Taylor who telephoned again and, after a week or more of attempting to contact Mrs. Hix, Taylor did so, and indicated that he would talk with her about some diamonds which he had in his possession.
Montgomery Police Detective A.L. Kirks testified that on November 3,1982, he went to the Holiday Inn East with FBI Agent Judy Hix and Don Byrd, another Montgomery Police Officer. There he saw Mrs. Hix talking with the appellant, John P. Day, who was positively identified by him in court. The conversation lasted just a short time and he saw them later meet a second time the following day, also at the Holiday Inn East. He stated the conversation lasted somewhere between 45 minutes to one hour.
FBI Special Agent Judy Hix testified that she had served in that capacity since 1978. She reiterated being at Nancy Goffs beauty salon and being told of the telephone call from one Bill Taylor. Later she stated that Taylor telephoned her and indicated that he would like to talk with her about some diamonds that he had won gambling in Montgomery. He stated that he had played poker and that there were some doctors and lawyers involved and that frequently they would need extra money and they would put the diamonds up to use to obtain cash for gambling. She stated that Taylor told her this in his telephone conversation and they agreed to meet at the Holiday Inn East on November 2, 1982. She stated that after the first meeting Taylor came to her home on November 3, 1982 and that she told him to change the meeting to the Holiday Inn East. She stated that she then went to the Holiday Inn East where she was accompanied by Montgomery Police Detective Don Byrd. She stated that she then had a conversation with the appellant, John Day, near the swimming pool at the Holiday Inn East. She stated that the conversation lasted almost an hour and that he showed her three different stones. The first was a large stone which Day indicated to her was almost four carats and he stated that he wanted $8,000 for this. Mrs. Hix testified that she advised him that she wanted something smaller, in the 1.3 carat range. He said that he had one but that it would run $3,300. He then brought out certain types of jewelry equipment, including a loop, a magnifying glass and a pair of tweezers used to hold the stone so that it could be properly viewed. She stated that Day then went into considerable detail talking about the whiteness and clarity of the stone, indicating that there was a slight imperfection, pointing it out but indicating all the while that it was *1166 a diamond worth $3,300. She stated that she and Don Byrd then left but arranged to meet appellant again at the Holiday Inn a little after 2:00 o’clock that same day. She stated that she went back to the Holiday Inn that afternoon accompanied by a Montgomery Police Detective named Beverly Ranbo. Mrs. Ranbo was with her when she paid the appellant $3,300 and was advised by the appellant that it was an actual diamond which she was receiving.
On cross-examination Mrs. Hix indicated that she had been shown two other stones, but that they had agreed on the stone in question, which was identified as Exhibit 1 by her at trial.
On cross-examination she stated she took the stone and had it examined by a jeweler and was told that it was a zirconia, that it had the hardness of a diamond and had a flaw in it similar to a diamond, but that it was not a valuable stone.
Mrs. Hix also indicated that the appellant told her you could take the stone and it would cut glass. She indicated the appellant represented to her that it was, in fact, a valuable diamond.
Montgomery Police Officer Steve Ireland testified that on November 3, 1982, he assisted Police Investigator Wicker in talking with the appellant at police headquarters. He stated that the man in question was identified at that time as a Carl Bennett and that he gave him permission to search his room at number 171 at the Governor’s House Motel. Ireland stated that a consent to search form was executed which was identified as State’s Exhibit 5 at trial. He stated that a suitcase was removed from the room and brought back to headquarters which contained other stones.
Police Investigator James Wicker stated that he talked with the appellant on November 3,1982 at police headquarters. He stated that appellant was given his Miranda rights and that, after an explanation of his Constitutional rights and without any fear, threats or intimidation, the consent to search form was executed by the appellant.
The appellant admitted, after questioning, that the suitcase in question was his property. Certain stones and jewelry which were removed from the suitcase were then identified at trial as having belonged to the appellant.
Montgomery Police Officer James Wicker stated that he took the Exhibits which had been removed from the suitcase, Exhibit 7 and 8, to Klein and Son Jewelers to be examined and then the stones were brought back to police headquarters. These were identified as zirconias by Joe Robinson of Klein and Son.
Mr. Robinson stated that Exhibit 1 was examined by him and he testified that it was definitely not a diamond. (R. 90).
The State next presented the testimony of Sheri S. Carroll who testified that in August, 1980 she was contacted by a person, whom she positively identified in court as the appellant, who wanted to sell her a diamond. She stated that she and her husband went to three different jewelry stores, Kleins, Brombergs and Wilson’s, where a stone which was being offered to her by a party named Mr. Ellis, but whom she identified at trial as being the appellant, Mr. Day. He offered her a marquise cut diamond which he stated was around four carats and was worth approximately $40,000. He told her he wanted $8,000 for this. She stated that after having it examined at the three places, the appellant put the stone in a plastic tube and then put it in his pocket. She stated that they went to her husband’s office and then paid the $8,000 and that the appellant then turned over the tube containing the stone to her. She stated that the next day she went to Zales Jewelry Store and later to Brombergs and was told that the stone in question was a zirconia.
Montgomery Police Investigator Jeff Roy corroborated Mrs. Sheri Carroll’s story as he had been called upon to investigate the sale of the stone to her.
The State next presented the testimony of one Charles Cole who testified that he lived in Mobile, Alabama and was in the TV marketing business. He stated that he *1167 was acquainted with the appellant, John Day, whom he pointed out in open court. Mr. Cole indicated that he had met the appellant in February, 1980 and that the appellant had purchased some products from him. He stated that the appellant told him that he was a gambler but that he also sold diamonds and other precious stones. He stated that they went to a jewelry store in Mobile owned by one Leon Wildmire, the store in question being known as Leon’s Jewelry, on Western American Drive. He stated that the appellant told him he was going there to obtain some cubic zirconias. He stated that he was going to make someone in Montgomery or Tuscaloosa “the proud owner of a cubic zirconia”.
Later, the appellant told Mr. Cole about how difficult it was to distinguish a zirco-nia from a real diamond. He stated that it would cut glass and that the man he had making these could fix them where they even had a slight built in flaw which could only be distinguished from a real diamond by a true expert. He stated that he would sell these for diamonds to different persons using the story that he had won these in a poker game having played with some wealthy doctors and lawyers who would swap them in for cash.
The appellant, following the close of the State’s evidence, moved for a judgment of acquittal and for a directed verdict on the grounds that the State failed to prove a prima facie case. Both of these motions were denied following argument.
The appellant presented no testimony at trial. Following the trial court’s oral charge as extended the appellant announced “Satisfied, Your Honor.” (R. 159).
I
“Section 13A-8-2. Theft of property definition.
“A person commits the crime of theft of property if he:
“(1) Knowingly obtains or exerts unauthorized control over the property of another, with intent to deprive the owner of his property; or
“(2) Knowingly obtains by deception control over the property of another with intent to deprive the owner of his property. (Acts 1977, No. 607, p. 812 § 3201).” “Section 13A-8-3. Theft of property in the first degree.
“(a) The theft of property which exceeds $1,000.00 in value, or property of any value taken from the person of another, constitutes theft of property in the first degree.
“(b) The theft of a motor vehicle, regardless of its value, constitutes theft of property in the first degree.
“(c) Theft of property in the first degree is a Class B felony. (Acts 1977, No. 607, p. 812, § 3202; Acts 1978, No. 770, p. 1110.)”
The appellant argues that mere false statements by an accused will not sustain a conviction for theft by deception without a showing that such, in fact, were relied upon. The cases as cited in appellant’s brief deal with the subject of false pretenses.
In § 13A-8-1, deception is defined as follows:
“(1) DECEPTION occurs when a person knowingly:
“a. Creates or confirms another’s impression which is false and which the defendant does not believe to be true; or
“b. Fails to correct a false impression which the defendant previously has created or confirmed; or
“c. Fails to correct a false impression when the defendant is under a duty to do so; or
“d. Prevents another from acquiring information pertinent to the disposition of property involved; or
“e. Sells or otherwise transfers or encumbers property, failing to disclose a lien, adverse claim or other legal impediment to the enjoyment of the property when the defendant is under a duty to do so, whether that impediment is or is not valid, or is not a matter of official record; or
*1168 “f. Promises performance which the defendant does not intend to perform or knows will not be performed. Failure to perform, standing alone, however, is not proof that the defendant did not intend to perform. The term ‘deception’ does not, however, include falsity as to matters having no pecuniary significance, or puffing by statements unlikely to deceive ordinary persons. ‘Puffing’ means an exaggerated commendation of wares or services.”
In Andersen v. State, 418 So.2d 967 (Ala.Crim.App.1982), this court in construing these statutes stated:
“A key word in § 13A-8-2, supra, is ‘deception’ which occurs when a person knowingly ‘promises performance which the defendant does not intend to perform or knows will not be performed.’ Ala. Code § 13A-8-l(l)(f).”
Similarly, this court in Deep v. State, 414 So.2d 141 (Ala.Crim.App.1982) stated:
“The import of § 13A-8-2 is to proscribe all similar conduct motivated by similar intent which has similar results. The focus of this new ‘theft’ statute is on the intent of the perpetrator (thief) to deprive the owner of his property. The legislature’s objective was to remove the distinctions in the old theft statutes based on the manner of obtaining control and, thereby, shed the old classifications of ‘larceny’, ‘embezzlement’, etc., which allowed those guilty of one type of theft to escape punishment when the evidence proved a different type. See Commentary to § 13A-8-2 through § 13A-8-5, Code of Alabama 1975.”
In the case at bar the jury had before it the statements of Mrs. Hix and of the police officers with reference to the stones which were found and the statements of Mr. Cole with reference to his conversation with appellant in Mobile. As noted in Andersen, supra and Deep, supra, it is the intent of the actor, here the appellant, Mr. Day, which is the paramount consideration.
We are clear to the conclusion that whether or not Mrs. Hix was deceived under the aforesaid authorities was a matter which was, and properly so, submitted to the trial jury. See also Towns v. State, 449 So.2d 1273 (Ala.Crim.App.1984).
As the State of Alabama correctly points out in its brief, the authorities cited by appellant were decided many years before the enactment of the present statutes here under consideration. Formerly larceny was defined in the following manner as stated by Mr. Chief Justice Torbert in McMurphy v. State, 358 So.2d 1069 (Ala.1978) as follows:
“ ‘Larceny is the felonious taking and carrying away of the personal property of another with intent on the part of the taker to convert it to his own use or to deprive the owner thereof. Higgs v. State, 113 Ala. 36, 21 So. 353; Moulden v. State, 47 Ala.App. 573, 258 So.2d 915; Armstrong v. State, 49 Ala.App. 396, 272 So.2d 603. Jones v. State, 56 Ala. App. 444, 447, 322 So.2d 735, 737 (1975).”
Wilkins v. State, 373 So.2d 353, 355 (Ala.Crim.App.1979).
An interesting discussion between the common law kindred crimes of larceny, false pretense and embezzlement is found in Murchison v. State, 32 Ala.App. 427, 26 So.2d 622 (1946). These distinctions were followed by this court in Jones v. State, 56 Ala.App. 444, 322 So.2d 735, cert. denied, 295 Ala. 408, 322 So.2d 741 (1975) and Hassell v. State, 342 So.2d 1357 (Ala.Crim.App.1977).
An examination of these authorities clearly shows that the appellant’s actions in the case at bar would have formerly constituted larceny by trick as opposed to false pretenses under the earlier Alabama statutes. This, however, is not the charge against the appellant in the case at bar, but is pointed out because of the authorities cited in appellant’s brief.
As hereinabove stated, we are clear to the conclusion that it was the intention of the appellant in the case at bar by virtue of his actions which presented a clear case for the jury.
*1169 II
The appellant next argues that the trial court erred in admitting Mrs. Sheri S. Carroll's testimony with reference to the transaction in 1980 wherein she purchased an alleged diamond from the appellant.
As pointed out in Deep v. State, 414 So.2d 141, at 149 (Ala.Crim.App.1982), it is the intent of the party which must be determined from the testimony in the cause. It was proper for the jury to determine the appellant’s intent since this was a key issue in this case. The testimony was properly admitted under Deep, supra. Likewise, the admission of the transaction with Mrs. Carroll was properly admitted to show the appellant’s identity as well as his guilty knowledge since the deception in the case at bar was a key issue for the jury. Hassell v. State, 342 So.2d 1357 (Ala.Crim.App.1977) and Jones v. State, 56 Ala.App. 444, 322 So.2d 735, cert. denied, 295 Ala. 408, 322 So.2d 741 (1975).
We find no error with reference to this contention.
III
Finally, the appellant argues that the jury must be instructed as to each essential element of the offense charged.
As heretofore noted, following the conclusion of an extensive oral charge by the trial judge, the appellant announced “satisfied”. The trial court then gave one of the written requested charges.
At this point the appellant made no effort to except to the refusal by the trial court to give the balance of his written requested charges. See Record 206-209. We are therefore clear to the conclusion that appellant has failed to preserve any issue with reference to the instructions to the trial court for appellate review. Allen v. State, 414 So.2d 989 (Ala.Crim.App.1981), affirmed Allen v. State, 414 So.2d 993 (Ala.1982). See also Temporary Rule 14, Alabama Rules of Criminal Procedure.
Moreover, this court has carefully examined the oral charge and the tendered written requested charges and find that the legal principles were fully and fairly covered by the trial court in its oral charge. See § 12-16-13, Code of Alabama 1975.
This record is free of error and the judgment below is due to be and is hereby affirmed.
AFFIRMED.
All the Judges concur.