777 So.2d 214 (1999)
Ex parte State of Alabama and
Ex parte Rayford HAGOOD.
(Re Rayford Hagood v. State).
1980414 and 1980445.
Supreme Court of Alabama.
November 5, 1999.
Rehearing Denied March 3, 2000.
Bill Pryor, atty. gen., and Rosa H. Davis, asst. atty. gen., for the State.
Donald L. Colee, Jr., Birmingham; and William K. Bradford, Birmingham, for Rayford Hagood.
*215 MADDOX, Justice.
This is a capital-murder case. The facts are fully set out in the opinion of the Court of Criminal Appeals, Hagood v. State, 777 So.2d 162 (Ala.Crim.App.1998); therefore, we will summarize here only those facts necessary to explain our holdings.
Rayford Hagood and Mildred Price were involved in an illicit relationship. At the time, Mildred was married to Jessie "Buddy" Price. On the afternoon of February 13, 1994, Mildred telephoned Hagood and told him that her husband had abused her youngest son, Marlon, by kicking him. Hagood claimed to be the father of Marlon. Hagood told Mildred to leave the back door to her home open and that he would come over that night and "put a stop to it."
Sometime after 11:00 o'clock that evening, Hagood entered the Price home. He hid in a bedroom and waited there for Jessie Price to fall asleep. At some point, when Jessie Price got up to use the bathroom, Hagood attacked him. Evidence presented at Hagood's subsequent trial for capital murder indicated that when the attack began Mildred's four children came into her bedroom and remained there while the attack on Jessie Price was occurring in the next room. Testimony indicated that the victim cried, yelled for help, and begged for his life, pleading with Hagood and saying that if Hagood would not harm him, he would leave. According to the record, Price's pleas were to no avail. Hagood bound Price's ankles, knees, arms, and hands with duct tape, and he also put duct tape over Price's mouth and eyes and around his head. Hagood took a pistol that belonged to Jessie Price, and, according to his own statement, took Jessie Price and left him on the bank of a nearby river. The following morning Jessie Price's body was found floating face down in the river.
Dr. Kenneth Warner, a medical examiner who performed the autopsy on Jessie Price's body, testified that, although Price had died by drowning, without medical attention he would have died within a short time from the wounds he received. Dr. Warner further testified that the wounds on Jessie Price's body were inflicted before he died and were consistent with the theory that Price had been defending himself against someone who was beating him with a blunt object, such as a metal pipe.
Hagood was subsequently arrested and charged with murder. He was convicted of the capital offense of murder during a kidnapping in the first degree, § 13A-5-40(a)(1), Ala.Code 1975. The jury, by a vote of 12-0, recommended that Hagood be sentenced to death by electrocution, and the trial court, after making the written findings required by § 13A-5-47(d), followed the jury's recommendation and sentenced Hagood to death.
The Court of Criminal Appeals affirmed the conviction, but, because it found error in the trial court's jury instructions regarding an aggravating circumstance, reversed the sentence of death and remanded the case for new sentencing proceedings. Hagood and the State both petitioned this Court for certiorari review, and this Court granted both petitions. The State presents only one issue for review; the State claims that the Court of Criminal Appeals erred in reversing the sentence of death and remanding for new sentencing proceedings. Hagood presents 20 issues for our review, 18 of which were addressed by the Court of Criminal Appeals in its opinion.
We have carefully read the opinion of the Court of Criminal Appeals, and we have carefully analyzed all of the defendant's arguments relating to the validity of the conviction. Moreover, we have reviewed the record for plain error. We conclude that the opinion of the Court of Criminal Appeals correctly addresses each of the 18 issues Hagood raised both in that Court and in his petition to this Court; therefore, we will not address those 18 *216 issues further. We will address two issues that were not addressed in the Court of Criminal Appeals' opinion, and we will also address the issue raised here by the State.
In summary, we find in the record no error that "has or probably has adversely affected [Hagood's] substantial rights." Rule 39(k), Ala. R.App. P. Consequently, we affirm the judgment of the Court of Criminal Appeals insofar as that judgment affirmed Hagood's conviction. We conclude, however, that the Court of Criminal Appeals erred in reversing the sentence of death and remanding the cause for new sentencing proceedings; therefore, we reverse the judgment of the Court of Criminal Appeals to the extent it reversed the sentence of death and remanded.
We will first address the two new issues presented by Hagood. Then we will address the issue presented by the State.

I.
Hagood first asserts that during the penalty phase of his trial, the court improperly allowed the State to use a facsimile copy of a record showing two prior convictions. He claims that the admission of this evidence directly conflicts with the holding of the Court of Criminal Appeals in Allen v. State, 611 So.2d 1152 (Ala.Crim. App.1992)that to prove a prior felony conviction the State must, at the sentencing hearing, present to the trial court a certified copy of the record showing the conviction. He argues that, because the State presented a facsimile copy of a certified record showing two prior felony convictions in Indiana, the State's evidence did not satisfy the authentication requirements of Rule 902(4), Ala. R. Evid.
Section 13A-5-10.1(a), Ala.Code 1975, provides that "[c]ertified copies of case action summary sheets, docket sheets or other records of the court are admissible for the purpose of proving prior convictions of a crime, if the prior conviction is otherwise admissible under the laws of the state." Records showing prior convictions are properly admitted if they are certified by the clerk or deputy clerk of the court in which those convictions were obtained. See Elston v. State, 687 So.2d 1239, 1241 (Ala.Crim.App.1996) (holding that the records detailing the defendant's convictions were properly authenticated because they were certified by the deputy clerk of the court in which those convictions were obtained). This method of authentication has been recognized as a proper method for proving a prior conviction to establish the existence of an aggravating circumstance in a capital case. See Bush v. State, 695 So.2d 70, 91 (Ala.Crim.App.1995), aff'd, 695 So.2d 138 (Ala.1997). The use of this method is supported by Rule 44(a)(1), Ala. R. Civ. P., which, when amended in 1995, superseded § 12-21-70, Ala.Code 1975. Rule 44(a)(1), Ala. R. Civ. P., prescribes the means used for proving out-of-state convictions when the official records of those convictions are kept outside the state. Rule 44(a)(1) states:
"An official record kept within the United States, or any state, district, commonwealth, territory, or insular possession thereof, or within a territory subject to the administrative or judicial jurisdiction of the United States or an entry therein, when admissible for any purpose, may be evidenced by an official publication thereof or by a copy attested by a person purporting to be the officer having the legal custody of the record, or by the officer's deputy. If the official record is kept without the state, the copy shall be accompanied by a certificate under oath of such person that such person is the legal custodian of such record and that the laws of the state require the record to be kept."
Like the documents in Elston, the record presented in this case that detailed Hagood's prior convictions was properly certified by the clerk of the Newton Superior Court, Newton County, Indiana.
Alabama has in the past barred the use of fax copies of certified records of conviction. See Shumate v. State, 676 So.2d *217 1345, 1346-47 (Ala.Crim.App.1995) (holding that a facsimile copy of a certified copy of a document showing a prior felony conviction is not sufficient proof of a prior felony conviction for purposes of enhancing a criminal defendant's sentence under the Habitual Felony Offender Act). However, the Alabama Rules of Evidence, adopted effective January 1, 1996, changed this. Those rules positively allow the use of fax copies of records showing prior out-of-state convictions. Rule 1001(2) and (3) and Rule 1003; and see Charles W. Gamble, McElroy's Alabama Evidence, Section 225.01(1) (5th ed.1996).
Rule 1003, Ala. R. Evid., states that "[a] duplicate is admissible to the same extent as an original unless (1) a genuine question is raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original." The Advisory Committee's Notes indicate that Rule 1003 was intended to "exempt[ ] duplicates from the best evidence rule of preference for originals" and to make duplicates "admissible, without accounting for the original or establishing its unavailability." Rule 1001(3) defines the term "duplicate":
"[A] counterpart produced by the same impression as the original, or from the same matrix, or by means of photography, or by equivalent technique which accurately reproduces the original."
The fax copy of the record detailing Hagood's prior convictions in Indiana falls within the Rule 1001(3) definition of "duplicate." The fax copy exactly replicated the certified record, and was intended to serve in lieu of the original, which was kept in Indiana. Moreover, Hagood never raised "a genuine question ... as to the authenticity of the original" document or certification showing his prior convictions. Rule 1003. Likewise, during the sentencing phase of his trial Hagood never disputed the validity of his prior convictions. He merely argued that the fax copy of the record detailing his prior convictions was not in proper form.
We conclude that, in regard to proving the prior convictions, the State followed each of the requirements of our evidentiary rules. Therefore, the trial court did not err during the sentencing phase of the trial when it admitted the record showing Hagood's prior convictions in Indiana. Accordingly, we conclude that the Court of Criminal Appeals' holding that these records were admissible does not conflict with Allen v. State, supra, as Hagood contends.

II.
Hagood next contends that the opinion of the Court of Criminal Appeals creates a direct conflict with that court's prior decision in Bailey v. State, 574 So.2d 1001 (Ala.Crim.App.1990). Hagood argues that that court held in Bailey that under Alabama caselaw an expert cannot testify as to a conclusion on an ultimate issue the jury is to decide. Hagood asserts that he was unfairly prejudiced during the sentencing phase of his trial because, he says, the trial court allowed Dr. Warner to "answer the ultimate question of fact" in this case.
Hagood argues that the State asked Dr. Warner's opinion concerning an ultimate issue of fact, specifically, whether this crime was "especially heinous." However, contrary to what Hagood claims, the trial court sustained Hagood's objection to this question, and the trial court never allowed Dr. Warner to answer it. The following colloquy took place during the sentencing phase:
"[Prosecutor]: ... [W]ould you say and would it be your opinion that this case was especially heinous to the victim, Buddy Price?
"[Defense counsel]: Judge, objection.
"[Court]: Sustained."
Because the trial court did not allow Dr. Warner to answer the question, we conclude that Hagood was not prejudiced by that question.
In Deep v. State, 414 So.2d 141, 150 (Ala.Crim.App.1982), the Court of Criminal *218 Appeals addressed a somewhat similar issue. In rejecting the defendant's claim of prejudice, that court held in Deep that "the potential prejudicial effect of [an] unanswered question [is] removed by the action of the trial court in sustaining [the defendant's] objection." Id. The court in Deep held that it was sufficient that the trial court sustained the defendant's objection to the questionthe trial court was not required to give curative instructions to the jury. Id.
We see no conflict between the Court of Criminal Appeals' opinion in this case and its opinion in Bailey, supra, and we conclude that Hagood was not prejudiced by the unanswered question.

III.
The Court of Criminal Appeals reversed Hagood's sentence because it concluded that the trial court, during the sentencing phase of Hagood's trial, gave an insufficient jury instruction regarding an aggravating circumstance. The State argues that the Court of Criminal Appeals erred in that regard.
At the sentencing phase, the trial court instructed the jury on what the State contended was an aggravating circumstance in Hagood's casethat the murder was committed during the commission or attempted commission of a robbery. The court instructed the jury as follows:
"A person commits the crime of robbery in the first degree if he uses or threatens to use or threatens the use of forceI'm sorryagainst the owner of personal property. And, while in the course of committing a theft of personal property with intent to overcome his physical power of resistance, in order to compel his acquiescence in the taking of the personal property, and in the course of said theft, he intentionally causes serious physical injury or death to a person."
(R. 1476.) The Court of Criminal Appeals held that because the term "theft" is defined by statute,[1] and because the jury had not already been instructed during the guilt phase of the trial on the offense of robbery and all its elements, including the definition of "theft," the trial court erred in not instructing the jury on the statutory definition of "theft" during its sentencing instructions. The Court of Criminal Appeals relied, in part, on our decision in Ex parte Stewart, 659 So.2d 122 (Ala.1993).
In Ex parte Stewart, 659 So.2d 122 (Ala. 1993), we reversed a death sentence and remanded the case for the trial court to conduct new sentencing proceedings because the trial court had given an erroneous instruction to the jury during the sentencing phase. We held that although the trial court properly found two statutory aggravating circumstances, this fact did not render the erroneous instruction harmless. Id. at 128. Our holding in Stewart was based upon Ex parte Williams, 556 So.2d 744 (Ala.1987), wherein we had held that the mere fact that a sentencing jury had considered an improper aggravating circumstance required that the sentence of death be set aside, despite the fact that the trial court had properly exercised its sentencing authority. 556 So.2d at 745.
This case and Stewart are distinguishable. The issue in Stewart was an erroneous jury instruction; the issue in this case deals with a question of the sufficiency of a jury instruction. We conclude that the jury instruction on robbery in this case was sufficient.
The trial court's instructions on the aggravating circumstance of robbery are substantially the same as those stated in the pattern jury instruction on murder during robbery in the first degree developed *219 by the Alabama Law Institute and recommended by this Court.[2] It is the preferred practice to use the pattern jury instructions in a capital case. Stewart v. State, 730 So.2d 1203, 1211 (Ala.Crim.App. 1996); cf. Ex parte Harrell, 470 So.2d 1309, 1314 (Ala.1985); and Boyd v. State, 715 So.2d 825, 844 (Ala.Crim.App.1997) (holding that there is no plain error in regard to a jury charge when the charge substantially follows the Alabama Pattern Jury Instructions). Because the trial court's instruction on robbery was substantially the same as the pattern jury instruction on robbery, even though it did not contain the statutory definition of "theft," we find no error.
The Court of Criminal Appeals, in its well-reasoned opinion, recognized that there are instances where, even though a term has been defined by statute, the failure to define that term for the jury does not constitute reversible error. It went on to explain that in those instances, the "term" is not susceptible to different interpretations. Consequently, it stated that it could not say that the term "theft" is subject to only one interpretation and thus could not say that the term "theft" could be understood by average jurors in its common usage. 777 So.2d at 197. We disagree.
The Court of Criminal Appeals recognized in its opinion that in some cases, even though a relevant term is statutorily defined, the trial court's failure to give the statutory definition does not constitute reversible error. This is one of those cases. The term "theft" is a term of sufficient common understanding and did not need to be specifically defined in order for the jury to adequately consider the crime of robbery as an aggravating circumstance in this case. Other courts that have addressed this issue have reached the same result. See State v. Ng, 110 Wash.2d 32, 44, 750 P.2d 632, 639 (1988) ("theft," like "assault," is a term of such common understanding as to allow the jury to convict of robbery); see also Commonwealth v. Yarris, 519 Pa. 571, 598, 549 A.2d 513, 527 (1988) ("theft" is commonly understood as stealing, and the trial court's recitation of theft as an element of the crime of robbery is adequate); Gauldin v. State, 632 S.W.2d 652, 656 (Tex.App.1982) (the charge to the jury, which included as an element of the robbery offense, that it occurred "in the course of committing theft," is sufficient); State v. Hudson, 157 W.Va. 939, 944-45, 206 S.E.2d 415, 419 (1974) (instruction that the crime of robbery consists of a felonious taking of property from a person by violence and that it also consists of theft of property from the victim by the use of force and arms was held sufficient); compare Grant v. State, 420 So.2d 903 (Fla. Dist.Ct.App.1982) (the elements of the underlying felony need not be explained with the same particularity that would be required if that offense were the primary crime charged); and Hensley v. State, 228 Ga. 501, 503-04, 186 S.E.2d 729, 731 (1972) (the trial court's instructions to the jury, defining "armed robbery" in the language of a Georgia statute, which uses the term "with intent to commit theft," were sufficient).
In a capital case, when the judge is charging the jury on the underlying felony stated in the aggravating circumstance found in § 13A-5-49(4), Ala.Code 1975, the preferred practice is to charge the jury on each element of the applicable underlying *220 felony. However, in this case, we conclude that the trial court's failure to give the jury the statutory definition of "theft" was not error, because the instruction sufficiently apprised the jury of the crime of robbery.
Our conclusion is supported by the Court of Criminal Appeals' opinion in Miller v. State, 405 So.2d 41 (Ala.Crim.App. 1981), which the State cited in its brief in support of its petition for the writ of certiorari. In Miller, the Court of Criminal Appeals held that a jury charge on robbery in the first degree, almost identical to the charge given in this case, adequately explained the term "theft."[3]Id. at 48.

IV.
The Court of Criminal Appeals pretermitted discussion of four issues relating to Hagood's sentence, in light of its order remanding for further sentencing proceedings. Although Hagood did not present these issues in his petition for the writ of certiorari, we have addressed one of these issues in Section I, supra, and we have reviewed the remaining three issues for plain error, since Hagood made no objection at trial in regard to the alleged errors these issues relate to. After thoroughly reviewing the record and the applicable caselaw, we find no plain error.

V.
The judgment of the Court of Criminal Appeals is affirmed insofar as it affirmed Hagood's conviction for the capital offense of murder during a kidnapping in the first degree, § 13A-5-40(a)(1), Ala.Code 1975. We reverse that judgment insofar as it reversed the sentence of death and remanded for new sentencing proceedings. This case is remanded with instructions for the Court of Criminal Appeals to reinstate the trial court's order sentencing Hagood to death.
1980445AFFIRMED AS TO THE CONVICTION.
1980414REVERSED AS TO THE SENTENCE AND REMANDED WITH INSTRUCTIONS TO REINSTATE THE DEATH SENTENCE.
HOUSTON, COOK, SEE, and JOHNSTONE, JJ., concur.
HOOPER, C.J., and LYONS, J., concur in part and concur in the result in part.
BROWN, J., recuses herself.[*]
HOOPER, Chief Justice (concurring in part and concurring in the result in part).
I concur in the main opinion, except as to Part I; as to Part I, I concur in the result. I write specially to elaborate on the issue regarding the admissibility of a facsimile copy of a certified copy of a document evidencing a prior conviction. I agree that the justice system is moving toward the point at which it will need to admit into evidence facsimile copies of certified copies of documents showing prior convictions. Today's world is moving at an even faster pace, and the justice system must keep up. However, I believe this change in the law is not clearly provided for by the Alabama Rules of Evidence and that it merits further explanation.
The reason for requiring a certified copy is to have the lawful custodian of the original verify that the document being offered to prove the prior offense is an accurate copy of the original. Certified copies provide an assurance of authenticity and, for this reason, are self-authenticating under Rule 902, Ala. R. Evid. A copy of a certified *221 copy does not provide an assurance that the copy is authentic, only that the certified copy is authentic. Nevertheless, a facsimile copy falls within the definition of an admissible "duplicate" in Rule 1001 because it accurately reproduces the original. In permitting other jurisdictions to send by fax copies of certified copies of documents evidencing convictions, the potential for fraud is minimized because the source of the facsimile transmission is the same as the source of the certified copy. Furthermore, the kind of document at issue in this case does not lend itself to a probability of fraud or tampering. When a record of a conviction is certified and transmitted by facsimile to a requesting court, it is unlikely that the clerk or custodian of records in the sending court will have a motive to falsify the document.
However, I do not believe that a facsimile copy of a certified copy of a document evidencing a conviction will always be admissible. Under Rule 1003, a defendant may raise an objection as to authenticity or as to unfairness in admitting the duplicate. Furthermore, I would not extend today's holding to permit the admission of facsimile copies that did not originate from the source of the certified copy. In other words, as long as the facsimile originates from the clerk or custodian of the records, the fax copy of the certified copy would be admissible.
In this case, the certificate of exemplification detailing Hagood's prior conviction was properly signed by the judge and the clerk of the Newton Superior Court in Newton County, Indiana, and it was transmitted by facsimile. Hagood did not question the authenticity of the document, nor did he dispute the validity of his prior conviction. Therefore, I agree that the record of Hagood's prior conviction was properly admitted.
LYONS, J., concurs.
NOTES
[1] See § 13A-8-2, Ala.Code 1975, which states:

"A person commits the crime of theft of property if he:
"(1) Knowingly obtains or exerts unauthorized control over the property of another, with intent to deprive the owner of his property...."
[2] The pattern jury instruction for the crime of "murder during robbery in the first degree (or attempt thereof)" (based upon § 13A-5-40(a)(2), Ala.Code 1975), set out in Alabama Pattern Jury InstructionsCriminal p. 5-28 (3d ed.1994), states, in part:

"A person commits a robbery in the first degree if, in the course of committing or attempting to commit a theft, he uses force against the person of the owner or any person present with intent to overcome his physical resistance or physical power of resistance, or threatens the imminent use of force against the person of the owner (or any person present) with intent to compel acquiescence to the taking of or escaping with the property, and in doing so he causes serious physical injury to another."
[3] The jury charge on robbery in the first degree given in Miller was as follows:

"Therefore, in order to find a Robbery in the First Degree offense, you must find that the Defendant in this case, Katherine Miller, committed or attempted to commit theft from the person or presence of the named party in the indictment, Mrs. Starling, I have forgotten her first name, and that in the course of committing or attempting to commit the theft, the Defendant, Katherine Miller either used force or threatened the imminent use of force against the person of Mrs. Starling with the intent to overcome her physical resistance or physical power to resist or to compel acquiescence to the taking of or an escaping with the property."
405 So.2d 41, 48.
[*] Justice Brown was a member of the Court of Criminal Appeals when that court considered this case.