Charles Randall Stewart was convicted by a Talladega County jury of capital murder and was sentenced to death. The Court of Criminal Appeals initially remanded the cause to the trial court for further proceedings on two issues, but found no error as to the other issues raised. Stewart v. State, 601 So.2d 491
(Ala.Cr.App. 1992). On return to remand, the Court of Criminal Appeals found no error in the trial court's resolution of the two issues that were the subject of the remand. The Court of Criminal Appeals proceeded to address the propriety of the conviction of capital murder and the sentence of death. That court affirmed Stewart's conviction and sentence. Stewart v.State, 659 So.2d 120 (Ala.Cr.App. 1992). Stewart filed a petition for a writ of certiorari, and it was granted as a matter of right pursuant to Rule 39(c), Ala.R.App.P.
All of the issues raised in Stewart's petition and brief were addressed by the Court of Criminal Appeals, with either a full discussion or a summary statement that no error was presented.[1] As to the issues affecting the entire trial or only the guilt phase, we see no error.
One issue merits some clarification. A particular veniremember mentioned that his wife was on the grand jury then serving, but the district attorney stated, erroneously, that Stewart had been indicted by the prior grand jury. Stewart argues that, if he had known that the veniremember's wife had served on the grand jury that had indicted him, he would have exercised a peremptory strike to prevent that veniremember from sitting on the petit jury. The Court of Criminal Appeals remanded for further inquiry into this issue and, in its opinion on return to remand, stated:
 "We further remanded this case for the trial court to determine whether the wife of one of the jurors had served on the grand jury that indicted the appellant. After a hearing, the trial court found that a juror's wife did sit on the grand jury that indicted the appellant, but that the juror did not have any knowledge of the facts surrounding the case and was not told anything about the case from his wife. There was nothing presented at the hearing to show that the juror's impartiality was affected in any way. The court's findings are supported by the record of the hearing.
 "Because there is no statutory reason for striking this juror, an 'absolute bias' on the part of the juror must be shown. Jenkins v. State, 627 So.2d 1034 (Ala.Cr.App. 1992). No absolute bias was established here."
The Court of Criminal Appeals has used the term "absolute bias" as the test for a challenge for cause when there is no statutory ground for such a challenge. Jenkins v. State,627 So.2d 1034 (Ala.Crim.App. 1992), affirmed, 627 So.2d 1054
(Ala. 1993); Nettles *Page 124 v. State, 435 So.2d 146 (Ala.Cr.App.), affirmed, 435 So.2d 151
(Ala. 1983). In neither case did this Court repeat the "absolute bias" language, and we express no opinion here as to whether that is the correct test, because Stewart does not argue that the fact that the veniremember's wife served on the grand jury was grounds for a challenge for cause.
Instead, Stewart argues that he was deprived of his right to exercise his peremptory strikes based on truthful answers from prospective jurors, citing Clark v. State, 551 So.2d 1091
(Ala. 1989); Ex parte O'Leary, 417 So.2d 232 (Ala. 1982), cert. denied, 463 U.S. 1206, 103 S.Ct. 3536, 77 L.Ed.2d 1387 (1983); and State v. Gilbert, 568 So.2d 876 (Ala.Cr.App. 1990).[2] The test applied in these cases is whether the defendant might have been prejudiced by a veniremember's failure to make a proper response.
Here, however, the juror was perfectly forthcoming as to his wife's service on the grand jury. The following is the entire exchange at voir dire:
 "JUROR: I would like to bring out one thing; I don't know if it matters or not. My wife has been on grand jury ever since September. She's been on the grand jury.
 "MR. RUMSEY [district attorney]: That's right. She is on the grand jury that is currently in session.
"JUROR: I just wanted to bring that out.
 "MR. RUMSEY: The grand jury that returned this indictment, Judge, I believe is a previous grand jury. I believe it's the March or April grand jury.
 "MR. GIDDENS [defense attorney]: This is just a new grand jury that's been empaneled; is that right?
"JUROR: I don't know. She don't tell me.
 "MR. RUMSEY: She has not discussed anything about this case or any case?
"JUROR: No, sir."
At the hearing on remand, the juror testified that he had mentioned to the jury that his wife had been on the grand jury that indicted Stewart, but he also testified that she had not told him anything about the case. Stewart focuses his argument on the district attorney's misstatement that the indictment had been returned by a prior grand jury. There is no evidence that the district attorney knowingly misstated this fact, and he testified at the remand hearing that he simply thought Stewart's indictment had been returned earlier than it had.[3] Stewart argues that the district attorney had a copy of the indictment at his counsel table, but there is no indication that he actually looked at it when he stated that the indictment had been returned by the March or April term of the grand jury. Stewart's attorney certainly also had access to a copy of the indictment. If he had wished to pursue the information volunteered by the juror in order to exercise his peremptory strikes, he could have easily looked at the indictment himself.
There is no indication of any wrongdoing or prejudice on the part of the juror. The trial court held a hearing on remand and found no basis for a holding that Stewart might have been prejudiced by the juror's service on the jury. We see no error, and we decline to reverse on this ground.
We have carefully studied all of the arguments affecting the validity of the conviction and we have found no error. Furthermore, Rule 39(k), Ala.R.App. P., provides as follows:
 "In all cases in which the death penalty has been imposed, upon review of the opinion of the Court of Criminal Appeals on certiorari, the Supreme Court may notice any plain error or defect in the proceeding under review, whether or not brought to the attention of the trial court, and take appropriate appellate action by reason thereof, whenever such error has or probably has adversely affected the substantial rights of the petitioner." *Page 125 
Accordingly, we have reviewed the record for plain error, and we have found no error affecting Stewart's conviction for capital murder that "has or probably has adversely affected the substantial rights of the petitioner."
However, as to the sentence of death, one of the issues discussed by the Court of Criminal Appeals and presented in Stewart's petition does present reversible error. Stewart argues that the trial court's instructions during the sentencing phase were improper because, he argues, they conveyed to the jury the impression that it could find aggravating circumstances other than those enumerated in Ala. Code 1975, § 13A-5-49. The trial court instructed the jury, in pertinent part, as follows:
 "The law of this state provides that the punishment for the capital offense for which you have convicted this defendant is either death by electrocution or life imprisonment without eligibility for parole. The law also provides that which of these two punishments should be imposed upon the defendant depends on whether any aggravating circumstances exist, and if so, whether the aggravating circumstances outweigh the mitigating circumstances.
 "An aggravating circumstance is a circumstance specified by law which indicates or tends to indicate that the defendant should be sentenced to death.
 "A mitigating circumstance is any circumstance that indicates or tends to indicate that the defendant should be sentenced to life imprisonment without parole instead of death.
 "The issue at this sentence hearing then concerns circumstances of aggravation and circumstances of mitigation, and you can consider and weigh against each other in deciding what the proper punishment is to be. In making your recommendations concerning what the punishment should be, you must determine whether any aggravating circumstances exist, and if so, you must determine whether any mitigating circumstance or circumstances exist. In making your determination concerning the existence of aggravating and mitigating circumstances, you should consider the evidence presented at this sentencing hearing we have just had. You also may consider any evidence that was presented during the guilt phase, that's the trial stage we have gone through, of the trial that is relevant to the existence of any aggravating or mitigating circumstances.
 "The law of the state provides a list of aggravating circumstances which may be considered by a jury in recommending punishment, if the jury is convinced beyond a reasonable doubt and to a moral certainty from the evidence that one or more or any of such aggravating circumstances exist in this case. The same definition that I gave you concerning reasonable doubt applies in this matter. If the jury is not convinced beyond a reasonable doubt based upon the evidence that one or more of such aggravating circumstances exist, then the jury must recommend that the defendant's punishment be life imprisonment without parole regardless of whether there are any mitigating circumstances in this case.
 "Now, the law provides a list of aggravating circumstances, and the list has eight statutory aggravating circumstances. And there has been argued to you and noted to you and we are concerned with only two out of this list besides any aggravating circumstances you might find from the facts of the case itself. One is number two, the defendant was previously convicted of another capital offense or a felony involving the use of threats or violence to a person. Number four provides that the capital offense was committed while the defendant was engaged or was an accomplice in the commission of or an attempt to commit or flight after committing or attempting to commit rape, robbery, burglary, or kidnapping. And if these have been proven to you beyond a reasonable doubt and to a moral certainty, they would constitute aggravating circumstances.
 "Now, the fact that I instruct you on such aggravating circumstances or define them, does not mean that the circumstances or any other aggravating circumstances have been proven beyond a reasonable doubt in this matter, because that is a *Page 126 
matter for you to decide under the circumstances. Now, we go to the question of mitigating circumstances, and the law on those, they are set out as follows: The evidence upon which a reasonable doubt about an aggravating circumstance may be based is both the evidence you heard in the guilt stage of the trial and the evidence you heard in this sentencing stage. The defendant does not have to disprove anything about an aggravating circumstance. The burden is solely on the State to prove such circumstance beyond a reasonable doubt. A reasonable doubt about an aggravating circumstance may arise from all of the evidence or from any part of the evidence. You may not consider any aggravating circumstance, other than the circumstance that you have been instructed about.
And you may not consider an aggravating circumstance unless you are convinced beyond a reasonable doubt by the evidence of the existence of the aggravating circumstance.
 "The law of this state provides a list of some of the mitigating circumstances which you may consider, but that list is not a complete list of the mitigating circumstances you may consider. I will now read to you a list of some of the mitigating circumstances you may consider. . . .
 "A mitigating circumstance does not have to be included in the list that I have read to you in order for it to be considered by you. In addition to the mitigating circumstances enumerated previously and specified, mitigating circumstances shall include any aspect of the defendant's character or record or any of the circumstances of the offense that the defendant offers as a basis for a sentence of life imprisonment without parole instead of death.
". . . .
 "In reaching your findings concerning the aggravating and mitigating circumstances in this case and in determining what to recommend that the punishment in this case should be, you must avoid any influence of passion, prejudice, or any other arbitrary factor. Your deliberation and verdict should be based upon the evidence you have seen and heard and the law on which I have instructed you."
(Emphasis added.)
Sections 13A-5-45 through -52, Ala. Code 1975, govern sentence hearings in capital cases. Section 13A-5-46(e) provides:
 "After deliberation, the jury shall return an advisory verdict as follows:
 "(1) If the jury finds that no aggravating circumstances as defined in section 13A-5-49 exist, it shall return an advisory verdict recommending to the trial court that the penalty be life without parole;
 "(2) If the jury determines that one or more aggravating circumstances as defined in section 13A-5-49 exist but do not outweigh the mitigating circumstances, it shall return an advisory verdict recommending to the trial court that the penalty be life imprisonment without parole;
 "(3) If the jury determines that one or more of the aggravating circumstances as defined in § 13A-5-49 exist and that they outweigh the mitigating circumstances, if any, it shall return an advisory verdict recommending to the trial court that the penalty be death."
(Emphasis added.) The aggravating circumstances are enumerated in § 13A-5-49, which provides, in pertinent part:
 "Aggravating circumstances shall be the following:
". . . .
 "(2) The defendant was previously convicted of another capital offense or a felony involving the use or threat of violence to the person;
". . . .
 "(4) The capital offense was committed while the defendant was engaged or was an accomplice in the commission of, or an attempt to commit, or flight after committing, or attempting to commit, rape, robbery, burglary or kidnapping. . . ."
(Emphasis added.)
Stewart argues that, because §§ 13A-5-46(e) and 13A-5-49
definitively establish that *Page 127 
the list of aggravating circumstances is exclusive, the trial court erred by instructing the jury that it could consider circumstances (2) and (4) on the statutory list of aggravating circumstances plus "any aggravating circumstances you might find from the facts of the case." Stewart further argues that the trial court's subsequent instruction — that "[y]ou may not consider any aggravating circumstance, other than the circumstance that you have been instructed about" — merely refers back to the first erroneous instruction, and therefore exacerbates, rather than ameliorates, the error.
The State initially notes that Stewart's trial counsel did not object to the instruction, and therefore argues that, to be reversible, the instruction must rise to the level of "plain error"; see A.R.App.P. 39(k). The State concedes that the trial court incorrectly said that the jury could generally consider the facts of the case as aggravating circumstances. It contends, however, that the instruction, when considered as a whole, adequately apprises the jury that it was to consider only the second and fourth aggravating circumstances enumerated in § 13A-5-49. It specifically argues that the subsequent instruction noted above clearly refers to the two statutory aggravating circumstances — § 13A-5-49(2) and (4), and argues that that subsequent instruction thus cures the isolated, erroneous remark. The Court of Criminal Appeals employed this rationale in holding that the instructions did not constitute error.
The State is certainly correct in arguing that a reviewing court must construe challenged jury charges in their entirety.Harris v. State, 412 So.2d 1278 (Ala.Cr.App. 1982). However, it is also true that the sentencing stage is a "due process hearing of the highest magnitude," Richardson v. State,376 So.2d 205, 224 (Ala.Cr.App. 1978), aff'd 376 So.2d 228
(Ala. 1979), and that a reviewing court must carefully analyze the jury instructions to determine if the trial court has fulfilled its duty to properly inform the jury. Proper instructions are absolutely indispensable if the jury is to effectively perform its role[4] in this crucial proceeding.
In light of these requirements, we must reject the argument that this instruction, when viewed in its entirety, clearly apprised the jury of the proper law. The learned and experienced circuit judge inadvertently instructed the jury that it could find other aggravating circumstances from the facts of the case itself. The trial court nowhere explicitly informed the jury that it could not consider nonstatutory aggravating circumstances. Although the trial court obviously did attempt to convey this proposition of law when it stated "You may not consider any aggravating circumstance, other than the circumstance that you have been instructed about," this instruction is itself fraught with ambiguity, because the trial court had at that point already told the jury that "we are concerned with only two out of this list besides anyaggravating circumstances you might find from the facts of thecase itself," and that "the fact that I instruct you on such aggravating circumstances or define them, does not mean that the circumstances or any other aggravating circumstances have been proven beyond a reasonable doubt."
This potential for confusion is illustrated by comparing the trial court's instructions on aggravating circumstances with its instructions on mitigating circumstances. After informing the jury of the statutory mitigating circumstances in §13A-5-51, the trial court stated:
 "In addition to the mitigating circumstances enumerated previously and specified, mitigating circumstances shall include . . . any of the circumstances of the offense that the defendant offers as a basis for a sentence of life imprisonment without parole instead of death."
(Emphasis added.) The emphasized phrase here is remarkably similar to the first objectionable phrase used by the trial court in describing the aggravating circumstances. Therefore, the jury could have reasonably believed that it was to find aggravating circumstances in the same manner as mitigating circumstances. *Page 128 
This error is crucial, for it is always presumed that the jury will follow the instructions given to it by the trial court.
 "A crucial assumption underlying that system [the system of trial by jury] is that juries will follow the instructions given them by the trial judge. Were this not so, it would be pointless for a trial court to instruct a jury, and even more pointless for an appellate court to reverse a criminal conviction because the jury was improperly instructed."
Parker v. Randolph, 442 U.S. 62, 73, 99 S.Ct. 2132, 2139,60 L.Ed.2d 713 (1979) (White, J., dissenting). Although the court correctly instructed the jury in other portions of the charge, the inadvertent erroneous statements directly contradicted the correct ones, and we cannot tell which portion of the charge the jury may have followed. Because the ambiguity in the instruction may well have prevented the jury from correctly carrying out its function, we hold that the instruction constitutes plain error.
It is true that the trial court, in fulfilling its duty as the ultimate sentencing authority pursuant to § 13A-5-47, properly found in its sentencing order that the State had proved two statutory aggravating circumstances beyond a reasonable doubt. However, this does not render the erroneous jury instruction harmless, because this Court held in Ex parteWilliams, 556 So.2d 744 (Ala. 1987), that a sentencing jury's mere consideration of an improper aggravating circumstance requires that the sentence of death be set aside, despite the trial court's proper exercise of its sentencing authority:
 "The Court of Criminal Appeals reasoned that, because the trial court, as the ultimate sentencing authority, did not consider illegal evidence ('the incorrect aggravating circumstance') in the sentencing hearing, the trial court's error in permitting the jury to consider such evidence in arriving at its recommendation of the death sentence was harmless. The basic flaw in this rationale is that it totally discounts the significance of the jury's role in the sentencing process.
 "The legislatively mandated role of the jury in returning an advisory verdict, based upon its consideration of aggravating and mitigating circumstances, can not be abrogated by the trial court's errorless exercise of its equally mandated role as the ultimate sentencing authority. Each part of the sentencing process is equally mandated by the statute (§§ 13A-5-46, -47(e)); and the errorless application by the court of its part does not cure the erroneous application by the jury of its part. For a case consistent with our holding, see Johnson v. State, 502 So.2d 877
(Ala.Cr.App. 1987). To hold otherwise is to hold that the sentencing role of the jury, as required by statute, counts for nothing so long as the court's exercise of its role is without error."
556 So.2d at 745.
For the foregoing reasons, the judgment is affirmed as to Stewart's conviction for capital murder, but reversed as to the sentence of death, and the cause is remanded for the Court of Criminal Appeals to order a new sentencing hearing before a jury.
AFFIRMED AS TO CONVICTION, REVERSED AS TO SENTENCE, AND REMANDED.
HORNSBY, C.J., and MADDOX, ALMON, SHORES and KENNEDY,* JJ., concur.
ADAMS, J., dissents.
[1] For example, in part XV of its first opinion, 601 So.2d 491, the Court of Criminal Appeals rejected Stewart's arguments that the trial court erred in its instructions during the guilt phase. The court discussed at length only the "reasonable doubt" instruction, and then concluded, "We have reviewed appellant's other allegations concerning the court's instructions in the guilt phase and find no error." 601 So.2d at 505. We agree that Stewart's other arguments regarding the instructions during the guilt phase are not sufficiently meritorious to require individual discussion, and we agree similarly with the resolution by the Court of Criminal Appeals of other subissues within the larger issues that are addressed.
[2] Stewart also cites Ex parte Beam, 512 So.2d 723 (Ala. 1987), but that case, like Jenkins and Nettles, involved a challenge for cause, and so is not pertinent.
[3] The indictment was returned on September 27, 1990, and Stewart's trial began on October 22, 1990.
[4] See discussion of Ex parte Williams, 556 So.2d 744 (Ala. 1987),infra.
* Although Justice KENNEDY did not sit at oral argument, he has studied the record and listened to the tapes of oral argument. *Page 129