COBB,' Judge,
concurring in part and dissenting in part.
The majority in this ease has offered a finely written opinion, but it reaches certain conclusions of law with which I cannot agree. Therefore, I must respectfully dissent from the portions of the opinion containing those conclusions.
There are several guilt-phase issues that cause me concern, but I agree with the majority that these issues do not require reversal. Nevertheless, the record contains several examples of misconduct on *202 the part of the prosecutor, specifically when he continually questioned witnesses in a manner that injected into the trial facts that were not in evidence. The trial court permitted the prosecutor essentially to testify, even though such conduct is unacceptable. E.g., Tomlin v. State, 591 So.2d 550, 558 (Ala.Crim.App.1991) (prosecutor erroneously permitted to ask questions not supported by the evidence). Although this practice by the prosecutor is unacceptable, I am not convinced that in this case the error is reversible in light of the ample evidence presented at trial indicating that the appellant went on a shooting rampage and intentionally murdered three people. Consequently, I agree with the majority’s affirmance of the conviction.
However, I disagree with this Court’s conclusion that the sentencing phase was free from reversible error. The trustworthiness and appropriateness of the jury’s recommendation of the death penalty can be seriously undermined by the trial court’s failure to admit evidence of mitigating circumstances. Lockett v. Ohio, 438 U.S. 586, 603-604, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978); Eddings v. Oklahoma, 455 U.S. 104, 112-116, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982)(death sentence reversed; evidence of defendant’s turbulent family history erroneously excluded from consideration). Equally vital to the capital-sentencing determination is that the jury be properly instructed on the mitigating circumstances. E.g., Ex parte Stewart, 659 So.2d 122, 127 (Ala.1993). The sentencing phase in this case contained serious flaws in both respects. The court failed to admit evidence the appellant sought to have admitted surrounding the appellant’s grossly dysfunctional family (Part IX of the majority opinion), and the court failed to specifically instruct the jury on the mitigating circumstance set out at § 13A-5-51(6), Ala.Code 1975, even though it agreed to give the instruction (R.1927) (Part X).
At the sentencing hearing, the prosecutor argued that Smith should not be permitted to present the wealth of evidence concerning his family circumstances and background:
“They can’t get into that. They can’t get into his brother is mentally retarded. They can’t get into his sister tried to commit suicide. They can’t get into that his sister has an alcohol problem or attempted suicide. Mr. Smith’s cousin ... was in a mental institution. That is not relevant at all. They can put up this defendant and his conditions, but not the family.”
(R.1923.)
The prosecutor further argued:
“They can put in things about him, that he has got a drinking problem, he’s got a mental problem, he tried to kill himself ...; but things about the family are not relevant to mitigating circumstances.”
(R.1932-1933.)
The majority correctly notes that § 13A-5-52, Ala.Code 1975, provides that mitigating circumstances shall include “any aspect of the defendant’s character or record,” and other relevant mitigating circumstances. The majority further acknowledges that the United States Supreme Court has stated that evidence about a capital defendant’s background and character, including a disadvantaged background and history of mental problems, is relevant to the sentencing determination. Penry v. Lynaugh, 492 U.S. 302, 317-319, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989). Because Smith was precluded from presenting and fully developing this evidence, he was, I believe, essentially precluded from presenting his case in mitigation, and he is entitled to a new sentencing hearing before a jury.
*203 The trial court’s failure to instruct the jury on § 13A-5-51(6), Ala.Code 1975, the statutory mitigating circumstance regarding the defendant’s capacity to appreciate the criminality of his conduct or conform to the requirements of the law was, I believe, also reversible error, even though defense counsel failed to object. Alabama appellate courts have previously recognized:
“[T]he sentencing stage is a ‘due process hearing of the highest magnitude,’ Richardson v. State, 376 So.2d 205, 224 (Ala.Cr.App.1978), aff'd[,] 376 So.2d 228 (Ala.1979), and that a reviewing court must carefully analyze the jury instructions to determine if the trial court has fulfilled its duty to properly inform the jury. Proper instructions are absolutely indispensable if the jury is to effectively perform its role in this crucial proceeding.”
Ex parte Stewart, 659 So.2d 122, 127 (Ala.1993)(footnote omitted)(quoted in Thomas v. State, 824 So.2d 1 (Ala.Crim.App.2000)).
The trial court here agreed to instruct the jury on this mitigating circumstance, but then failed to do so. While the majority correctly observes that the jury charge as a whole referred to some of the mental health mitigating evidence presented, I disagree with its conclusion that a specific instruction on this statutory mitigating circumstance “would have had no meaningful effect.”[21] Nor can I agree that “it is highly unlikely that the jury would have found the existence of this mitigating circumstance had it been instructed specifically.”
Because proper instructions are “absolutely indispensable” to ensuring that the jury properly performs its sentencing role, I believe that the omission of this vital instruction, combined with the trial court’s preclusion of relevant evidence offered in mitigation, require that this case be remanded for a new sentence hearing before a jury.
For the foregoing reasons, I concur with the majority’s resolution of the guilt-phase issues and its affirmance of the conviction, but must respectfully dissent as to its resolution of the foregoing sentencing phase issues. This cause should be remanded for a new sentence hearing before a jury, so that Smith has the opportunity to present all relevant mitigating evidence to a properly instructed jury. Only then, I believe, will Smith be afforded a full and fair sentencing hearing.

On Return To Remand

PATTERSON, Retired Appellate Judge.
On original submission of this case, we affirmed the conviction of the appellant, Jerry Jerome Smith, for the capital offense of “[mjurder wherein two or more persons are murdered by the defendant by one act or pursuant to one scheme or course of conduct,” § 13A-5-40(a)(10), Ala. Code 1975. Smith v. State, 213 So.3d 108 (Ala.Crim.App.2000). However, we could not review the appellant’s sentence of death at that time, because of ambiguities pertaining to the sentencing by the trial court and also because of deficiencies and possible errors in the trial court’s sentencing order. We remanded this case for the trial court to enter a new sentencing order *204 in compliance with § 13A-5-47(d) and with our specific directions set out in Parts IX, X, XI, and XXIX of our opinion. The trial court has submitted a written order on its return to our remand in which it addresses our directives in Parts IX and X only. We are again compelled to remand.
We find that some of the deficiencies noted below would have been avoided had the trial court entered “a new sentencing order that fully complies with § 13A-5-47(d),” as we requested. 213 So.3d at 201. We intended that the requested order not merely supplement the trial court’s first sentencing order, but that it be all inclusive. To piecemeal a final sentencing order together raises additional problems, as is the case here.
Until we are able to clearly discern the trial court’s findings as to the aggravating, statutory mitigating, and non-statutory mitigating circumstances, we cannot carry out our statutory duty of review. See § 13A-5-S3 (requiring that we first determine whether the trial court’s findings concerning the aggravating circumstances and the mitigating circumstances were supported by the evidence and then that we independently weigh those circumstances to determine whether death was the proper sentence).
“In capital cases, it is the duty of this court to independently determine whether the sentence of death is appropriate in a particular case. In order to reach this conclusion, we must reweigh the aggravating circumstances and the mitigating circumstances as fomid, by the trial court.”
Roberts v. State, 735 So.2d 1244, 1269 (Ala.Crim.App.1997), aff'd, 735 So.2d 1270 (Ala.1999) (emphasis added).
Accordingly, we direct that the trial court’s sentencing order on return to our second remand include within its four corners all necessary findings. Therefore, we tailor this remand order to the pertinent provisions of § 13A-5-47(d), which are as follows:
“[T]he trial court shall enter specific written findings concerning the existence or nonexistence of each aggravating circumstance enumerated in Section 13A-5-49, each mitigating circumstance enumerated in Section 13A-5-51, and any additional mitigating circumstances offered pursuant to Section 13A-5-52. The trial court shall also enter written findings of facts summarizing the crime and the defendant’s participation in it.”
(Emphasis added.)

Summary of the Crime and the Defendant’s Participation in It

We direct the trial court to correct two errors: (1) the record shows that the indictment was returned February 20, 1997, not November 20, 1996, as stated in its first order; and (2) the first order states that David Lee Bennett died on October 10, 1996, but the date of the crime was October 19, 1996.

Aggravating Circumstances

In Part XI of our original opinion, we noted the attorney general’s express concern for the trial court’s explanation for its finding of the aggravating circumstance that the appellant knowingly created a great risk of death to many persons, § 13A-5-49(3).[1] The attorney *205 general asked us to hold in abeyance our review of the trial court’s finding in regal'd to this circumstance until the trial court submitted an amended sentencing order in this regard. We shared his concern; therefore, we granted his request and instructed the trial court to address this concern in its order on return to remand. The trial court did not do so. In fact, its second order did not address any aggravating circumstance. Thus, we must again hold our review in abeyance until the trial court files a proper and complete order specifically addressing this concern. In that order, the trial court is to set out its factual basis for finding the existence of this aggravating circumstance, if it finds that it does indeed exist, without basing its finding on the jury’s verdict in the guilt phase. Any finding in regard to this aggravating circumstance must be based on the trial court’s own analysis of the evidence, not on the jury’s verdict. See, e.g., Ponder v. State, 688 So.2d 280, 283-85 (Ala.Crim.App.1996). Further, if it finds the existence of § 13A-5-49(3), it should declare that its finding does not automatically flow from the jury’s verdict.
We further call to the trial court’s attention a discrepancy in the number of aggravating circumstances it found. Although the court stated that the evidence proved the existence of four aggravating circumstances, its order lists its findings as to only two. We think that this discrepancy is probably a clerical error, but due to the fact that this is a capital case and the fact that this case must again be remanded, we direct the trial court to follow the better practice of listing each of the eight aggravating circumstances enumerated in § 13A-5-49 and making a specific finding as to the existence or nonexistence of each one. See, e.g., Taylor v. State, 666 So.2d 36, 71 (Ala.Crim.App.1994), aff'd, 666 So.2d 73 (Ala.1995). Compare Stewart v. State, 730 So.2d 1203, 1218-19 (Ala.Crim.App.1996) (the trial court’s failure to enter specific written findings concerning the existence of each aggravating circumstance, as required by statute and recognized to be the safer practice, was harmless; there was nothing to indicate that the trial court had refused or had failed to consider any aggravating circumstance, and the appellate court had before it sufficient basis for reviewing the defendant’s sentence), aff'd, 730 So.2d 1246 (Ala.1999).

Statutory Mitigating Circumstances

In Part XXIX of our original opinion, we stated:
“In its sentencing order, the trial court stated the following in reference to the statutory mitigating circumstances: ‘I have considered all of the statutory mitigating circumstances and find that some of them exist.’ (Emphasis added.) However, the trial court addressed only one: § 13A-5-51(6). (The court addressed this one even though it had not submitted this circumstance to the jury *206 for its consideration, yet did not address the two it did submit to the jury, §§ 13A-5-51(2) and (3).) In sentencing a defendant in a capital case, the trial court is required, among other things, to enter specific written findings concerning the existence or nonexistence of each mitigating circumstance enumerated in § 13A-5-51. Clearly, a finding by the trial court that ‘some’ of the statutory mitigating circumstances exist, without identifying them, is insufficient.”
213 So.3d at 200-01 (citations omitted).
The trial court’s order on return to remand does not correct this deficiency. In fact, the trial court did not refer to any specific statutory mitigating circumstance except by its mere mention of § 13A-5-51(6). Without an express finding by the trial court on each statutory mitigating circumstance, we cannot perform our mandated duty. On the court’s return to our second remand, its order should list each statutory mitigating circumstance and reflect the trial court’s finding of the existence or nonexistence of each circumstance.
In Part X of our original opinion, we found the trial court’s comments regarding the interpretation and application of § 13A-5-51(6), the statutory mitigating circumstance that “[t]he capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law was substantially impaired,” ambiguous. As to its finding on the mitigating circumstance, we specifically stated:
“We cannot ascertain from the trial court’s order[2] whether the court disregarded all evidence relevant to § 13A-5-51(6), and if it did so, whether it dismissed the evidence either (1) in the erroneous belief that, as a matter of law, § 13A-5-51(6) could be considered only if the defendant had pleaded at the guilt phase not guilty because of mental disease or defect, or (2) in the erroneous belief that the necessary proof for a finding of the mitigating circumstance at § 13A-5-51(6) must present a mental disease or defect of such magnitude as to constitute a defense to the offense ....
[[Image here]]
“We further find, in addition to its erroneous interpretation of the interplay between the defense of mental disease or defect and § 13A-5-51(6), that the trial court improperly rejected § 13A-5-51(6) as a mitigating circumstance solely on its finding that the appellant intended to kill the victims. The converse to the trial court’s exclusion of § 13A-5-51(6) on its finding of an intent to kill is that the mitigating circumstance is present only if the intent to kill is absent; if that were so, the defendant would be entitled to an acquittal because he did not have the intent to kill. A capital murderer can have the intent to kill, but still have substantial impairment of his capacity to appreciate the criminality of his actions or to conform his conduct to the requirements of the law....
“Because of the ambiguity of the trial court’s interpretation of § 13A-5-51(6), the trial court, in reviewing or reconsidering the appropriate punishment for the appellant on remand, is to consider all evidence relevant to that mitigating circumstance. It is to do so without operation of any incorrect belief that *207 such evidence cannot be considered unless the appellant pleaded not guilty by reason of a mental disease or defect, that the evidence of substantially impaired capacity must rise to the level of a mental disease or defect, or that the circumstance is negated solely by evidence of intent to kill.”
213 So.3d at 149-50.
In its order submitted on return to remand, the trial court stated, in pertinent part:
“There were many factors that were considered by this Court, as were alluded by this Court in its original Order, regarding the Appellant and his past behavior and relationship with other family members. These factors are listed as follows:
[[Image here]]
“The Court considers all of the above mitigating evidence in regard to whether Appellant had a substantially impaired capacity, and finds that the aggravating circumstances presented at trial outweigh the mitigating circumstances.”
The trial court’s second order reflects that it considered most of the alleged facts proposed by the appellant to be relevant to the mitigating circumstance listed in § 13A-5-51(6). In our original opinion, we set out the mitigating factors the appellant claimed were supported by the evidence and pertinent to § 13A-5-51(6). However, in its order on return to remand, the trial court did not refer to those factors, but instead found to exist 12 of the 17 factors it had listed in its first order as being the factors it considered. Those 12 overlap the factors we set out in our opinion. Those not mentioned in the trial court’s 12, but included in our opinion as having been asserted by the appellant are: the appellant’s IQ, his low frustration tolerance and poor impulse control, the dysfunction of his childhood home, and the fact that he acted as a 12-year-old with regard to the capacity to form the intent to commit the crime. Unless the trial court indicates otherwise in its return to second remand, we will assume that it considered those and found that they were not relevant to § 13A-5-51(6) and/or that they were disproved by a preponderance of the evidence, § 13A-5-45(g). Cf. Williams v. State, 710 So.2d 1276, 1347 (Ala.Crim.App.1996) (the trial court is not required to specify, in its sentencing order, each item of proposed nonstatutory mitigating evidence offered that it considered and found not to be mitigating), aff'd, 710 So.2d 1350 (Ala.1997).
In further regard of § 13A-5-51(6), we point out that the trial court failed to indicate whether it found this mitigating circumstance to exist; failed to expressly indicate that it was not imposing the erroneous burden of proof it espoused at the sentencing hearing; and failed to expressly negate its initial declaration that a finding of intent forecloses a finding of the existence of the mitigating circumstance found at § 13A-5-51(6). While these latter declarations are certainly not required in the usual case, in the interest of clarity and judicial economy, we find that they are required here. Because the trial court’s order as to this mitigating circumstance is still ambiguous, until that ambiguity is eliminated by explicit expression of the correct interpretation of § 13A-5-51(6) and until we have an explicit finding that the mitigating circumstance found at § 13A-5-51(6) does or does not exist in this case, we cannot exercise our statutory responsibilities.

Nonstatutory Mitigating Circumstances

In Part IX of our original opinion, we noted that the trial court ruled, during the sentencing phase, that it would allow no *208 mitigating evidence concerning “anything that happened to anybody other than the defendant.” This ruling was made in regard to proposed evidence of the appellant’s family circumstances that would show, the appellant argued, that he “grew up in a markedly dysfunctional family,” which maximized his own deficiencies. (Appellant’s brief, p. 34.) We expressed concern that the trial court’s comments during the discussion pertinent to that ruling strongly indicated that the trial court, in determining the appellant’s sentence, did not consider the evidence that happened to include something regarding one of the appellant’s family members and, thus, it failed to consider how the appellant’s life had been affected by his experiences, with and the deficiencies of, his family members. The trial court’s sentencing order submitted on return to remand shows that the court complied with our instructions in this regard: the court set out the evidence offered in mitigation that happened to also pertain to the appellant’s family members and his life with them, declared that it had considered that evidence, and made a finding in regard to that evidence, stating that that evidence did not mitigate the appellant’s crime or punishment.
In Part XXIX of our original opinion, we also directed the trial court to make findings in regard to 17 proposed nonstatutory circumstances that it had listed in its original order as having considered. In its order on return to remand, it found 12 of those 17 proposed nonstatutory circumstances to be mitigating evidence “in regard to whether the Appellant had a substantially impaired capacity.” While we will not argue with whether each of those 12 is or is not relevant to that particular statutory mitigating circumstance, we point out that the trial court’s consideration of each of the 12 should not have been limited strictly to the context of that statutory circumstance. In other words, the trial court should have also considered each in regard to whether it independently was or was not a nonstatutory mitigating circumstance.
“In addition to the mitigating circumstances specified in Section 13A-5-51, mitigating circumstances shall include any aspect of a defendant’s character or record and any of the circumstances of the offense that the defendant offers as a basis for a sentence of life imprisonment without parole instead of death, and any other relevant mitigating circumstance which the defendant offers as a basis for a sentence of life imprisonment without parole.”
Section 13A-5-52. Thus, we direct the court on return to remand to so consider all evidence offered by the appellant.
By again considering all of the evidence offered and the nonstatutory mitigating circumstances proposed and issuing one all-inclusive sentencing order, the following inconsistencies in the two orders presently under review will be alleviated. As noted above, in the first sentencing order, the trial court listed 17 proposed nonstatu-tory mitigating circumstances, but did not make findings in regard to all of them. However, two that it did find, in the first order, to exist were not mentioned in its second order as among those it found to be mitigating.[3] Are we to assume that, on *209 second reflection of the appellant’s sentence, the court found them not to exist, or are we to assume that the court stands by its first determination? The trial court’s return to second remand should resolve these inconsistencies. In addition, in its first order, the court stated, “I find no credible evidence that [the appellant’s] use of drugs was a result of his mental or emotional disturbances.” Yet, in its second order, it found the following to be “mitigating evidence in regard to whether the Appellant had a substantially impaired capacity”: “The Defendant’s use or misuse or abuse of drugs was a result of his mental or emotional disturbance.” (Emphasis omitted.)
Finally, we note that, in the second order, the trial court stated that it had weighed the aggravating circumstances against the mitigating circumstances, but neglected to state that it also considered, as required by § 13A-5-47(e), the jury’s recommendation in its advisory verdict. The Alabama Supreme Court recently observed in Ex parte Taylor, 808 So.2d 1215, 1219 (Ala.2001), that “the trial judge must state specific reasons for giving the jury’s recommendation the consideration he gave it.”

Conclusion

Based on the foregoing, we must again remand. The trial court is to again determine the appellant’s sentence in light of our discussions above and in Parts X, XI, and XXIX of our opinion on original submission. On return to second remand, the court is to submit a new sentencing order that is all-encompassing.
By remanding this case again, we are not intimating any view, at this point, of the proper sentence for the appellant. We simply cannot make that determination until we have a new sentencing order setting out the findings of the trial court in regard to the aggravating, mitigating, and non-statutory mitigating circumstances and until the above-noted ambiguities are resolved.
The trial court shall take all necessary action to see that the circuit clerk makes due return to this court at the earliest possible time within 28 days of the release of this opinion.
The foregoing opinion was prepared by Retired Appellate Judge John Patterson while serving on active duty status as a judge of this court under the provisions of § 12-18-10(e).
REMANDED WITH DIRECTIONS AS TO SENTENCING.
McMillan, p.j., and cobb, BASCHAB, and WISE, JJ., concur; SHAW, J., recuses himself.

On Return to Second Remand.

PATTERSON, Retired Appellate Judge.
On original submission of this capital death case, we affirmed the conviction of the appellant, Jerry Jerome Smith, for the capital offense of “[m]urder wherein two or more persons are murdered by the defendant by one act or pursuant to one scheme or course of conduct,” § 13A-5-40(a)(10), Ala.Code 1975. Smith v. State, 213 So.3d 108 (Ala.Crim.App.2000). At that time, we examined the record for plain error, whether or not brought to our attention or to the attention of the trial court, in accordance with Ala.R.App.P. 45A, and found no plain error or defect in the proceedings in the guilt phase of the trial or in the jury-sentencing phase. However, we could not review the appellant’s sentence of death at that time because of ambiguities in the final sentencing proceeding before the trial *210 court, and because of deficiencies and possible errors in the trial court’s sentencing order. We remanded the case to the trial court with instructions that that court enter a new sentencing order in full compliance with § 13A-5-47(d), and with our specific directions set out in Parts IX, X, XI, and XXIX of our opinion. The trial court filed its return to remand on February 6, 2001, in the form of a supplemental sentencing order; that order addressed some of the concerns set out in our remand order, but failed to address others.
On March 30, 2001, we again remanded this case with instructions that the trial court enter a new sentencing order in full compliance with § 13A-5-47(d), and that the court address all the directives and concerns we raised in Parts IX, X, XI, and XXIX of our opinion on original submission. We also requested that the trial court not merely supplement a previous order, but submit an all-inclusive sentencing order. We pointed out that until the trial court submitted an order from which we could clearly discern its findings as to the aggravating, statutory mitigating, and nonstatutory mitigating circumstances, we could not carry out our statutory duty of review pursuant to § 13A-5-53; that section requires us to determine if the trial court’s findings concerning the aggravating circumstances and the mitigating circumstances were supported by the evidence, and to weigh those circumstances ourselves to determine whether death was the proper sentence.
The trial court filed its return to our second remand on May 11, 2001. The sentencing order on this second return appears to be all inclusive, as we requested, and appears to comply with our instructions set out in the previous opinions in this case. It satisfies the requirements of § 13A-5-47(d) that the trial court “enter specific written findings” concerning the existence or nonexistence of each aggravating circumstance enumerated in § 13A-5-49, each statutory mitigating circumstance enumerated in § 13A-5-51, and any nonstatutory mitigating circumstance found to exist under § 13A-5-52, as well as written findings of fact summarizing the crime and the appellant’s participation in the crime. We now have an order before us that enables us to perform the review required by § 13A-5-53. We will now review the record of the final sentencing proceeding before the trial court and the court’s final sentencing order.
Section 13A-5-53(a) requires that, in addition to reviewing the case for any error involving the conviction, we review the propriety of the death sentence. This review shall include our determination of the following: (1) whether any error adversely affecting the rights of the defendant occurred in the sentencing proceedings; (2) whether the trial court’s findings concerning the aggravating circumstances and the mitigating circumstances were supported by the evidence; and (3) whether death is the appropriate sentence in the case. Section 13A-5-53(b) requires that, in determining whether death is the proper sentence, we determine: (1) whether the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor; (2) whether our independent weighing of the aggravating circumstances and the mitigating circumstances indicates that death is the proper sentence; and (3) whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant.
After the jury convicted the appellant of the capital offense charged in the indictment, a separate sentencing hearing was held before the jury, in accordance with *211 §§ 13A-5-45 and -46. After hearing evidence concerning the aggravating circumstances and the mitigating circumstances and after being advised as to its function in reference to the finding of any aggravating circumstance and any mitigating circumstance, the weighing of those circumstances, if appropriate, and its responsibility in reference to the return of an advisory verdict, the jury recommended, by a vote of 11 to 1, that the appellant be sentenced to death.
Thereafter, the trial court held another sentencing hearing, in accordance with § 13A-5-47, to determine whether it would sentence the appellant to death as recommended by the jury or to life imprisonment without the possibility of parole. The trial court ordered, and received, a written presentence investigation report, as required by § 13A-5-47(b). The trial court’s final sentencing order reflects that the court considered all of the evidence presented, the arguments of counsel, the presentence investigation report, and the advisory verdict of the jury; that the trial court weighed the aggravating circumstances against the mitigating circumstances; and that, finding that the aggravating circumstances outweighed the mitigating circumstances, the trial court sentenced the appellant to death.
In accordance with Ala.R.App.P. 45A and the requirements of § 13A-5-53, we have examined the record for any plain error, whether or not brought to our attention or to the attention of the trial court. As we have already found, the proceedings in the guilt phase and in the sentencing phase before the jury do not present any plain error or defect. Now after reviewing the final sentencing proceeding before the trial court, including its sentencing order filed with this court on May 11, 2001, we find no plain error or defect in that proceeding.
In further exercising our review mandated by § 13A-5-53, we have scrutinized the trial court’s findings concerning the aggravating circumstances and the mitigating circumstances to determine if they are supported-by the evidence. In its findings of fact in its final sentencing order, the trial court found the existence of two aggravating circumstances: (1) that the defendant was previously convicted of a felony involving the use of violence to the person, § 13A-5-49(2), specifically first-degree assault (that conviction was based on the appellant’s guilty plea, the factual basis of which was that he shot the victim with a shotgun because the victim allegedly refused to pay him money owed him); and (2) that the defendant knowingly created a great risk of death to many persons, § lSA-b-lQ®).[1] We find that the evidence supports these two aggravating circumstances.
The trial court examined the evidence for statutory mitigating circumstances, pursuant to § 13A-5-51, and found the existence of one: that the capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law was substantially impaired, § 13A-5-51(6). In finding this circumstance, the trial court found that the evidence supported the following specific findings:
“(1) [That the appellant’s] mother and father were alcoholics and ... [that] one or more of his family members abused drugs and alcohol.
*212 “(2) [That the appellant] had no relationship with his father who was an alcoholic and usually unemployed and in jail.
“(3) [That the appellant’s] home environment was not healthy. His grandmother raised him because of this parent’s alcohol problems. [That the appellant] was sexually abused and molested by an older cousin when he was twelve years of age. [That the appellant’s] older brother was also molested. [That the appellant’s] sister became pregnant at the age of thirteen. [That the appellant] witnessed physical altercations between his parents. [That the appellant] and his siblings started abusing drugs and alcohol when he was eight years old. At the age of eighteen, [the appellant] lived with his sister who was abusing drugs and alcohol.
“(4) The evidence shows that [the appellant] had a brother with a serious mental illness and a sister who was mentally retarded. [The appellant’s] older brother was also mentally retarded and took psychotropic medication and had been diagnosed as a schizophrenic. Both siblings had been incarcerated. (See pages 46 & 47 of the Court’s Opinion [Smith v. State, 213 So.3d 108 (Ala.Crim.App.2000) ].)
“Other evidence provided on this issue was the following:
“(1) [That the appellant’s] use or misuse or abuse of drugs was a result of his mental or emotional disturbance.
“(2) [That the appellant] could never develop a father-son relationship with his natural father.
“(3) [That the appellant] generally has a pleasant disposition.
“(4) [That the appellant] is borderline mentally retarded.
“(5) [That the appellant] has the learning capacity of a third grader.
“(6) [That the appellant] was on drugs and alcohol when this crime was committed.
“(7) [That the appellant] acted under duress when this crime was committed inasmuch as he believed his mother would be injured or killed.
“(8) [That the appellant first] consumed alcohol at the age of eight.
“(9) [That the appellant was] sniffing gas and lacquer thinner at the age of nine or ten.
“(10) [That, at] the age of ten or eleven, [the appellant] was sexually abused by his cousin.
“(11) [That the appellant] was in special education classes all of his life; [he] only finished the eighth grade.
“(12) [That the appellant has] a history of excessive alcohol and drug abuse. [That the appellant] has sniffed gas, lacquer thinner and used marijuana, heroin, angel dust, acid (LSD), cocaine, Valium, Quaaludes, crank, rush, hash, alcohol, home brew and wine.
“(13) [That the appellant] cannot read or write.
“(14) [That the appellant has a] low IQ and ... low frustration tolerance and poor impulse control.
“(15) The dysfunction of his childhood home.
“(16) [That the appellant] acted as a 12-year-old with regard to the capacity to form the intent to commit the crime.”
The trial court also examined the evidence for nonstatutory mitigating circumstances, pursuant to the requirements of § 13A-5-52, and found the above-enumerated factors to also constitute nonstatutory mitigating circumstances. In addition, it recognized the *213 following as nonstatutory mitigating circumstances:
“(1) [The appellant] did not resist arrest.
“(2) [The appellant] has adapted well to prison life.”[2]
We hold that the trial court’s findings in regard to the statutory mitigating circumstances and nonstatutory mitigating circumstances are supported by the evidence.
In determining whether death is the appropriate sentence for this appellant, we note that the appellant was convicted of the offense of “[m]urder wherein two or more persons are murdered by the defendant by one act or pursuant to one scheme or course of conduct,” § 13A-5-40(10), This offense is defined by our statute as a capital offense. We take judicial notice that similar crimes have been punished capitally throughout the state. See, e.g., Williams v. State, 710 So.2d 1276 (Ala.Crim.App.1996), aff'd, 710 So.2d 1350 (Ala.1997); Siebert v. State, 555 So.2d 772 (Ala.Crim.App.), aff'd, 555 So.2d 780 (Ala.1989); Holladay v. State, 549 So.2d 122 (Ala.Crim.App.1988), aff'd, 549 So.2d 135 (Ala.1989); Peoples v. State, 510 So.2d 554 (Ala.Crim.App.1986), aff'd, 510 So.2d 574 (Ala.1987).
After reviewing the record of the guilt phase and the sentencing phase of the appellant’s trial, we find no indication that the sentence was imposed under the influence of passion, prejudice, or any other arbitrary factor. We have independently weighed the aggravating circumstances against the mitigating circumstances, and we find that the aggravating circumstances clearly outweigh the mitigating circumstances, and we are convinced that the sentence of death is appropriate in relation to this appellant and his crime. We concur in the recommendation of the jury and in the judgment of the trial court that death is the appropriate sentence in this case. The findings and conclusions of the trial court are amply supported by the evidence. Considering the crime committed and the appellant, we find that the sentence of death is neither excessive nor disproportionate to the penalty imposed in similar eases.
Accordingly, the appellant’s conviction and the sentence of death are due to be, and they are hereby, affirmed.
The foregoing opinion was prepared by Retired Appellate Judge John Patterson while serving on active duty status as a judge of this court under the provisions of § 12-18-10(e).
AFFIRMED.
McMILLAN, P.J., and COBB, BASCHAB, and WISE, JJ., concur.
SHAW, J., recuses himself.

*214
On Application for Rehearing

PATTERSON, Retired Appellate Judge.
APPLICATION FOR REHEARING OVERRULED.
McMILLAN, P.J., and BASCHAB and WISE, JJ., concur. COBB, J., dissents, with opinion. SHAW, J., recuses himself.

. To the extent the majority suggests that the arguments of counsel with regard to this mitigating circumstance somehow lessen the need for a proper sentencing instruction, I respectfully disagree. The jury was instructed that the arguments of counsel were not evidence, and that the court would instruct on the law. We have often held that juries are presumed to follow the instructions given. E.g., Reeves v. State, 807 So.2d 18 (Ala.Crim.App.2000).

. The court’s findings were, as follows:
“The jury verdict establishes that the defendant knowingly created a great risk of death to many persons. I find that the evidence was sufficient to support the jury’s determination. The evidence clearly shows the intentional killing of three people and serious risk of death to another person.” The attorney general’s specific concern, as expressed in his brief to this court, was that *205 portion of the court’s findings that suggests that the trial court might have based its finding of this aggravating circumstance on the jury’s verdict. The attorney general acknowledged, “The State would agree that a conviction pursuant to § 13A-5-40(10) does not automatically trigger a finding of the [aggravating circumstance] set forth in § 13A-5-49(3).” (Appellee’s brief, p. 95.)
We note that, since the appellant's crime, the Alabama Legislature has amended § 13A-5-49, effective September 1, 1999, to add as an aggravating circumstance that ”[t]he defendant intentionally caused the death of two or more persons by one act or pursuant to one scheme or course of conduct.” § 13A-5-49(9), This circumstance cannot, however, apply to the appellant's sentencing because it was not an enumerated aggravating circumstance in § 13A-5-49 at the time of the commission of this crime.

. The court’s order states:
“The capacity of Mr. Smith to appreciate the criminality of his conduct. No evidence supports this contention. In fact, the evidence shows just the opposite, i.e., that the Defendant intended to kill the three victims.”

. The court’s findings, in its first order, in regard to those two were as follows:
"(2) Jerry Jerome Smith did not resist arrest. However, the evidence shows that this is a valid mitigating circumstance.
[[Image here]]
"(4) Mr. Smith has adapted well to prison life. No opposing evidence was shown that the mitigating circumstance is not true. However, this mitigating circumstance does not weigh heavily with the Court considering the defendant’s prior criminal history.
*209 In fact, his prior incarcerations show that prison certainly didn’t rehabilitate him.”

. See our discussion of this aggravating circumstance as it relates to the facts of this case in Part XI of our opinion on original submission. Smith v. State, 213 So.3d 108 (Ala.Crim.App.2000).

. In this list of factors that it found to be nonstatutory mitigating circumstances, the trial court included the following:
"In prison, [the appellant] is capable of helping other inmates and contributing to society. However, the Court finds that this evidence does not mitigate [the appellant's] crime or punishment, in that [the appellant] has a prior criminal history of violence. Apparently, his prior incarceration shows that [prison] did rehabilitate him and make him a better person in society."
We find from the trial court’s conclusions that the court did not in fact consider this factor as a nonstatutory mitigating circumstance and, likewise, we do not so consider it. It is apparent that the trial court intended to say that prison did not rehabilitate the appellant, but it inadvertently omitted the word "not.” Likewise, the trial court intended to say that his prior incarceration did not "make him a better person.” In view of the appellant’s record, it cannot be reasonably argued that incarceration has had a rehabilitative effect on him.